[Crim. No. 3706. Second Dist., Div. Three. Oct. 1, 1943.]

THE PEOPLE, Respondent, v. JESUS HERNANDEZ MAYOR et al., Appellants.

Philip S. Schutz for Appellants.

Robert W. Kenny, Attorney General, and Elizabeth Palmer, Deputy Attorney General, for Respondent.

DESMOND, P. J.—Appellants were charged jointly with the crime of robbery in which a deadly weapon, namely, a rifle was employed, and in a jury-waived trial were found guilty as charged. As to the defendant Mayor, he was charged with a prior conviction of first degree robbery which he admitted upon being arraigned. In the instant case he was sentenced to the state prison and defendant Viveros, a minor, was committed by the trial judge sitting as a juvenile court to the Preston School of Industry during the period of his minority.

The appeals are from orders denying a motion for a new trial as to both defendants and from the judgment as to the defendant Mayor. These appeals are grounded upon the alleged insufficiency of the evidence to sustain the conviction of either defendant and, particularly, the insufficiency of the evidence by which the defendants were identified as the perpetrators of the crime.

One Joseph Alargon testified that both defendants, whom he had known for two or three years while at school, came to the liquor store where he was employed on November 6, 1942, at about 8:00 o'clock p. m.; that Viveros ordered a quart of beer which the defendants drank outside the store; that defendants returned shortly thereafter and Mayor at that time pulled a rifle from under his overcoat and ordered Alargon to place his hands on the counter while Viveros took the money from the cash register. At the trial Alargon first stated that he did not know whether they were the boys who held him up, but after his testimony given at the preliminary hearing was read to him, he said that it was true and by it, when asked about the rifle, he had admitted that defendant Mayor held the rifle while defendant Viveros took the money out of the cash register. A customer named Lawrence Franklin entered the store while the robbery was being perpetrated and positively identified Mayor as the man who held the rifle and ordered him to get against the wall, at the same time pointing the rifle directly at his stomach. Franklin was unable to identify Viveros positively for the reason that the man at the cash register was standing with his back toward him. He testified that Viveros "looked like" the man who was rifling the cash register. After the robbery had been completed, Mayor, according to Franklin, told him and Alargon to stand where they were, saying to Viveros, "Come on let's

get going," sent him out of the door and backed out after him. After the preliminary hearing Alargon told the deputy district attorney and the two deputy sheriffs who testified as arresting officers that defendant Mayor told him that if he testified against them they would get him. Mrs. Alargon overheard Mayor make this statement to her husband and on the trial Mayor admitted that he told Alargon at the preliminary hearing that "I will get even with you." Both Alargon and Franklin identified the rifle introduced as an exhibit as resembling the one used in the holdup.

Appellants denied having committed the robbery and attempted to set up an alibi which was replete with contradictions and altogether unsatisfactory and unconvincing.

The arresting officers testified that shortly after the commission of the robbery and at about 9:15 o'clock p. m. they called at the home where Mayor lived and where his brother-in-law Viveros also resided; that they found no one at home and, the house being open, they undertook to search the place; that they found no rifle but did find in one of the rooms an army shirt over the back of a chair and a garrison cap upon the dresser. About an hour later they returned to the house to stake it out and just as they arrived saw Mayor leave the house wearing an army uniform, including an army shirt and a garrison cap. His uniform had just been returned from a cleaner's and previously during that day and evening Mayor had been wearing civilian clothes. He was at the time AWOL (absent without official leave) from the armed forces. The officers arrested Mayor and entering the house found the rifle, which was introduced in court, leaning against the wall of the northwest room of the dwelling behind a closet door which had been opened. This same closet door was closed at the time of the original search. They also found a white shirt where the army shirt had been, but no garrison cap.

■ Since the trial court had an opportunity to hear all the testimony and to observe the witnesses, it is not within the province of this court to set aside its finding unless as a matter of law it can be said that there was no evidence to support the conviction. (*People* v. *Farrington*, (1931) 213 Cal. 459, 463 [2 P.2d 814]; *People* v. *Connelly*, (1925) 195 Cal. 584, 593 [234 P. 374]; *People* v. *Deal*, (1940) 42 Cal. App.2d 33, 36 [108 P.2d 103].) ■ We feel that in this case there was an abundance of evidence including considerable substantial evidence pointing to the guilt of the appellants. The identity of the appellants as the persons committing the

crime charged was established to the satisfaction of the trial court and, under the principles stated in *People* v. *Hightower,* (1940) 40 Cal.App.2d 102, 106-7 [104 P.2d 378], we are not in a position to disturb that finding.

The orders of the trial court denying motions for a new trial as to each defendant are affirmed, as is also the judgment affecting defendant Mayor.

Shinn, J., and Shaw, J. pro tem., concurred.