[Crim. No. 902. Fourth Dist. Mar. 27, 1951.]

THE PEOPLE, Respondent, v. DONALD PAWNEE KING, Appellant.

Daniel W. Gage and Clyde P. Harrell, Jr., for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant and appellant was tried on an information charging him with the crime of extortion (violation of Pen. Code, § 518). When arraigned he admitted a prior conviction of a felony (attempted extortion).

The charge was that on June 5, 1950, defendant, by force and fear, obtained $4,000 from one Warden E. Myers by wilfully and unlawfully threatening said Myers that unless he paid over to defendant said sum defendant would expose and impute to Myers a crime, to wit, violation of section 288a of the Penal Code. A jury verdict resulted in a conviction. Defendant appealed and now concedes that the evidence is sufficient to show that the crime of extortion has been sufficiently established, but claims that he had no part in it and that the evidence produced by him as to his claimed alibi should not only have raised a reasonable doubt in the minds of the jurors but his alibi was actually established by a preponderance of the evidence.

The complaining witness, a retired railroad employee, aged 73 years, who was on June 2, 1950, employed as night clerk in a hotel, was proceeding to the public library through the park in Riverside shortly before noon. There he had occasion to go to the restroom. He went inside of one of the three enclosures and soon thereafter a man who occupied the next enclosure stuck his fingers through a hole drilled in that dividing partition and suggested some sexual familiarity. Soon thereafter, as the complaining witness left the restroom, this person came up to him, showed him a badge inscribed "Riverside Detective," and told him he was under arrest and to come with him. They proceeded across the street where an accomplice was standing who was introduced as the "sergeant." The "sergeant" took charge of the complaining witness. The other man stated that he was going to the police station and file charges against the complaining witness. The "sergeant" inquired of Myers his name, where he lived, and asked other personal questions. After walking a short distance, a third person approached them, whom the complaining witness

identified as the defendant King. The "sergeant" told Myers: "There comes another officer." After some conversation, the "sergeant" said to defendant: "All right, put the cuffs on him and we will take him to jail." They took the complaining witness to his home. His wife was away at the time. After some conversation they threatened to take Myers to jail. However, after some admonition and promises made to the complaining witness that they would see what they could do to have the case dropped, they left. On June 5, about 1 or 1:30 p.m. the "sergeant" and defendant King contacted Myers at his home and told him that "somebody has reported this to my chief, and now I got to take you to jail." After considerable conversation about the complaining witness' putting up bail Myers offered to draw a draft payable to the city of Riverside for $4,000. This was refused. After disclosing the fact that the complaining witness had $4,500 in a bank in a joint savings account with his wife, the defendant King went to the bank with the complaining witness. Four thousand dollars in $100 bills was drawn from the account. King left the bank with the complaining witness and crossed over to the courthouse. As they were about to enter, the "sergeant" came towards them, told them to go back because there were a couple of newspaper photographers who wanted to take the complaining witness' picture. Thereafter, the "sergeant" told the complaining witness to give the bond money to defendant King. This was done and the witness went home awaiting further instructions as to the time of trial. About the 19th of the month someone called the complaining witness and told him that his bond had been forfeited. He then went to the police station and found that there was no record of such a charge or of such a bail forfeiture. About June 30, Myers identified King at the police station as the same person to whom he had handed the money. The identification of King in this transaction by Myers and at the times mentioned, was most positive.

Mrs. Monroe, who lived next door · to the complaining witness' home, testified that she saw defendant King and another man come to Myers' home on June 2d about 1 p.m.; that on June 5, the defendant King, whom she positively identified, and another man knocked at the door of complaining witness' home between 12 noon and 2 p.m.; that she accosted them and told them that he was sleeping because he worked at night; that they told her: "Yes, I know, but we have got

to see him''; that after about one hour they came out accompanied by the complaining witness.

Defendant failed to take the stand to testify in his own behalf. He produced several witnesses in an effort to establish an alibi. His first witness was a bank teller who identified certain money orders which he testified he cashed for defendant King in Los Angeles on June 2d, sometime between the hours of 10 a.m. and 1 p.m. Another witness was a brake specialist in Hollywood, who testified he saw defendant on June 2d in his shop sometime between 10:30 and 11 a.m.; that defendant left his car there for brake service and that he picked it up around 3:30 in the afternoon. A sales slip from which the witness refreshed his memory was introduced in evidence.

Another witness, manager of a clothing store in Hollywood, testified that he sold a suit of clothes to defendant on June 2d, at approximately 12:15 p.m., and that defendant remained in the store from 30 to 45 minutes. He also produced records indicating such a sale on that date.

An optometrist testified that defendant had his eyes examined in his office on June 5th at 12 noon; that the examination consumed about 45 minutes of time. However, on cross-examination it was revealed by the witness' appointment book received in evidence that there was a previous entry on May 26th, in reference to the examination of defendant's eyes. The witness stated in reply to the query: ''Is it a 'phony'?'' that ''It is nothing''; that due to the fact that his practice was small he might have some names of patients on his appointment book merely for the purpose of showing to other patients that he was relatively busy; that he had certain names on there and had a private check mark opposite the ones that were real appointments. It then developed that this witness lived next door to defendant. It was stipulated that the distance between the park in Riverside and the city hall in Los Angeles was 54 miles.

The testimony offered in opposition to the prosecution's evidence and in support of defendant's alibi afforded opportunity for a persuasive argument to the jury against the probability of defendant's guilt being established beyond a reasonable doubt, but we find nothing in the positive and direct testimony presented by the prosecution from which a reviewing court could justly conclude that such testimony is *per se* unbelievable. It is manifest that the jury in the instant case was authorized, if it conscientiously felt warranted

in doing so, after a full and fair consideration thereof, to reject any testimony which was contradictory to that given by witnesses for the prosecution. (*People* v. *Ohman*, 67 Cal. App.2d 467 [154 P.2d 463] ; *People* v. *Lewis*, 81 Cal.App.2d 119, 124 [183 P.2d 271].)

In this connection it should be remembered that a motion for new trial was made and was denied by the trial judge. He also had the witnesses before him and was fortified with the opportunity of observing their manner and demeanor on the stand, their apparent candor, and the reasonableness or unreasonableness of the statements they made. By his action in denying the motion for new trial the judge concurred in the verdict of the jury which rejected, as it had a right to do, the testimony offered by defendant, and accepted as true evidence given by the prosecution's witnesses. We are not in a position to disturb that finding. (*People* v. *Mayor*, 60 Cal. App.2d 722, 724 [141 P.2d 470] ; *People* v. *Ohman, supra.*)

The next complaint is that the court erroneously instructed the jury by reading CALJIC Instructions 51, 51-A and 51-B in reference to the failure of defendant to testify and failure to deny or explain facts within his knowledge. These forms of instruction are supported by *People* v. *Adamson*, 27 Cal.2d 478 [165 P.2d 3] ; *People* v. *Wade*, 71 Cal.App. 2d 646 [163 P.2d 59] ; *People* v. *Liss*, 35 Cal.2d 570 [219 P.2d 789].

Defendant argues that since other witnesses testified as to defendant's whereabouts on the days in question, his testimony would be but cumulative and accordingly the rule as there stated is not here applicable. We see no merit to this argument. It might be reasonably argued and inferred from the evidence produced that defendant had an explanation to make as to his whereabouts on the occasions mentioned, and that if the evidence produced by the prosecution were false, he would have denied it. (*State* v. *Grebe*, 17 Kan. 458; *Mooney* v. *Davis*, 75 Mich. 188, 193 [42 N.W. 802, 13 Am.St. Rep. 425] ; *People* v. *Adamson, supra.*)

The next point is that the court erred in receiving in evidence a copy of defendant's previous conviction of a felony. The facts surrounding the receipt of this document in evidence are that during the trial and out of the presence of the jury, counsel for defendant moved to strike from the information the allegation pertaining to the previous conviction. This motion was based on some claim that the offered record did not show that defendant had been previously con-

victed of a felony due to some claimed irregularity pertaining to the revocation of probation and the subsequent commitment. In support of the motion counsel for the defendant offered the record in evidence and the court admitted it ''in connection with the defendant's motion,'' which motion was denied. No claim is made that the court erred in denying the motion. The objection is that the jury was ''free to examine the same and know its contents,'' and accordingly must have erroneously gained information from the record that defendant had been previously convicted of attempted extortion. Since defendant offered the record in evidence and since there was no showing that this particular exhibit was shown to the jury, that the jury had access to it, or that it was considered for any other purpose except to have the court, out of the presence of the jury, rule upon the motion, defendant could not claim prejudicial error.

Complaint is made that the court refused defendant's proffered instruction pertaining to the duty of the jury, where two conclusions may be drawn from the evidence, to accept conclusions tending to prove innocence instead of guilt. The jury was sufficiently instructed on this subject in the language of CALJIC Instruction No. 26, page 28.

Defendant offered an instruction to the effect that the mere fact defendant had been previously convicted of a felony could not be considered by the jury as tending to prove his guilt. The court properly refused it because, as indicated by the court, there ''was no evidence of a previous conviction.''

Lastly, it is argued that the court erred in failing to give, on its own motion, a proper instruction embodying section 2061, subdivision 6 of the Code of Civil Procedure regarding the weight of evidence rule there indicated. He cites *People v. Putnam*, 20 Cal.2d 885, 890 [129 P.2d 367]. An examination of the instructions given shows that this subject was sufficiently covered.

Judgment and order denying a new trial affirmed.

Barnard, P. J., and Mussell, J., concurred.