[Crim. No. 3288. First Dist., Div. One. Sept. 4, 1957.]

THE PEOPLE, Respondent, v. ROOSEVELT JOHNSON, Appellant.

Roosevelt Johnson, in pro. per., and Milton Sills, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Marvin J. Christiansen and Arlo E. Smith, Deputy Attorneys General, for Respondent.

PETERS, P. J.—Roosevelt Johnson and Brady Hord were jointly charged with possession of heroin. Johnson admitted a prior conviction of the same offense. Hord pleaded guilty. Johnson appeals from the judgment of conviction entered on the verdict of guilty, and from the order denying his motion for a new trial.

Appellant makes no direct attack on the sufficiency of

the evidence. His appeal challenges the admissibility of certain evidence, the adequacy of the instructions and the propriety of portions of the argument of the prosecutor.

The main prosecution witness was Sergeant Hilliard of the Oakland Police Department. On May 12, 1956, Hilliard and another officer were cruising about Oakland in search of appellant. They wanted to question him about narcotics. They observed Johnson, accompanied by Hord, driving an automobile in excess of the speed limit. At Hilliard's request Johnson stopped and Hilliard started to question him. While doing so, he noticed a small rubber container between Johnson's feet of a type customarily used to carry narcotics and to keep them dry. Johnson claimed that this article must have belonged to a relative of his to whom he had loaned the car. When Johnson got out of the car Hilliard observed a little brown bottle on the floor near Hord's left foot. Hilliard ordered Hord to get out of the car. As he was doing so, he was observed picking up the bottle which he placed in his pocket. When ordered to show what was in his pocket, and after he had been placed under arrest, Hord started to run away and, while doing so, threw away the bottle, which was retrieved. It contained eight capsules of heroin. Hord was captured, and the two men were taken to the station.

While examining Johnson, Hilliard noticed that there were narcotic scars on both of his arms. On the left arm were six small scars which Hilliard, who qualified as an expert on the subject, estimated to be one to five days old. Appellant denied using narcotics, explaining that the scars were caused by injection of insulin and by a blood test which he had taken.

Hord testified that he was a heroin addict. On May 12, 1956, he met Johnson and agreed to accompany him to a barber shop. He then did not have any heroin in his possession. When the two were stopped by the officers, Johnson asked Hord to hold the brown bottle and he "guessed" that Johnson put it on the seat. It dropped to the floor and he picked it up and put it in his pocket. He ran when the officer admitted that he had no warrant, because he was scared. He admitted throwing the bottle away. He denied that Johnson had ever sold or given him narcotics. This story was substantially different from the story he had told at the time of arraignment, when he stated that Johnson had nothing to do with the heroin.

On cross-examination Hilliard testified that three days after his arrest Johnson was given a Nalline Test for narcotic

use, and passed the test. Consequently he was not charged with addiction. Hilliard testified that if Johnson were a light user a test made three days after an arrest would not show use.

This testimony is ample and sufficient to sustain the conviction of possession of heroin, and, as already pointed out, appellant makes no contention to the contrary. His first contention is that the testimony of Hilliard to the effect that the Nalline Test would not show if the person tested was a light user of heroin if given three or more days after the last ''fix'' was inadmissible, first, because Hilliard was not an expert on the subject, and, secondly, because the record shows that Hilliard's testimony was hearsay.

On direct examination Hilliard qualified as an expert on narcotics. He testified that he had been working with and about narcotics for four and a half years; that he had been assigned to the narcotics detail for the past two and a half years; that he had made about 900 narcotic arrests in that period; that he had observed and conversed with 850 narcotic addicts; that he had observed narcotic scars on about 1200 people and could tell the difference between new and old scars. On direct examination he made no reference to the Nalline Test. On cross-examination he was asked to describe that test, which he did, pointing out that the test was developed by the federal government at its hospital in Lexington, Kentucky, and that by it a trained observer can ascertain whether the suspect has any heroin in his system. The defense then asked Hilliard if he had requested that Johnson take such a test, and Hilliard said that he had, and that Johnson had taken the test and passed, and, as a result, had not been booked for addiction. The defense then dropped the subject. On redirect Hilliard was asked if he was present when the Nalline Test was given to Johnson and he replied that he had been. He was asked more details in reference to the test, which he gave, and also stated that the effectiveness of the test depended largely on how soon it was administered after the suspect has taken the heroin. After bringing out that the test was administered to Johnson three days after his arrest, the prosecutor asked Hilliard what the normal period was that the Nalline Test will show that the suspect has used heroin. This was objected to on the ground that Hilliard was not qualified to answer the question. Hilliard then testified that the Nalline Test had been given in Oakland in 262 cases and that he had been present, participated in giving the tests, and observed

their effects every time the test had been given. As a result he was thoroughly familiar with the results of the tests, and knew approximately the period after the last ''fix'' in which the test was effective. The court overruled the objection, and it was then that Hilliard opined that if the suspect were a light user the test would not be effective if given three or more days after the last ''fix.'' On recross examination Hilliard admitted that he was not a doctor. He was then asked: ''And this information you are testifying to was just something you heard doctors say?'' He replied: ''Yes, sir. It is what I have heard Dr. Terry say. He is the doctor that administers the Nalline Test. I have worked with him on each one of these tests that have been performed in the City of Oakland.'' The defense then moved to strike the testimony on the ground that it was hearsay. After the prosecutor pointed out that on direct examination the witness had testified that he had conversed with addicts and learned from them when they had had their last ''fix,'' the court denied the motion.

It seems quite clear that although the subject matter was one requiring expert knowledge, Hilliard was qualified to testify about the test in question. He had observed 262 such tests—all that had been given. He was in a position to observe its effect in ascertaining whether suspects were users. Appellant concedes that Hilliard was qualified to testify about the nature of the test and to describe it to the jury, but contends that he could not testify about the period during which the test would be effective. This is unsound. Having qualified as an expert, Hilliard was qualified to testify about what he had observed and learned during the tests. ■ It is elementary that whether a witness qualifies as an expert is a matter largely within the trial court's discretion. ■ Questions about the degree of his knowledge go to the weight, not to the admissibility of his testimony. (*People* v. *Penny*, 44 Cal.2d 861 [285 P.2d 926].)

■ As to the claimed hearsay nature of the testimony, it is true that in response to the direct question as to how he had gained the information about the time during which the test was effective, Hilliard testified that he had heard Dr. Terry say this. But he added that he had worked with Dr. Terry on every Nalline Test ever given in Oakland and, on direct, had testified that while giving the test had conversed with many addicts. It is a permissible and reasonable inference from the testimony that Dr. Terry was in charge of the

tests with Hilliard his assistant, and that after observing the effects of 262 tests Hilliard had acquired personal knowledge of the practical results and effectiveness of the test. ▮ Of course, the expert's opinion must be based on his own personal observations (*George* v. *Bekins Van & Storage Co.*, 33 Cal. 2d 834 [205 P.2d 1037]), but Hilliard's testimony reasonably meets that test.

▮ Appellant next contends that the jury should have been instructed that the evidence of the narcotic scars was admissible for the limited purpose only of showing appellant's knowledge of the nature of the substance found in his possession. Hilliard had testified that he had observed about 1,200 persons with narcotic scars, and generally described the causes and appearance of such scars. Later, over a relevancy objection, he testified that there were narcotic scars on appellant's arms, six of which were one to five days old. Appellant categorically denied that he used heroin.

Appellant admits, as he must (*People* v. *Perez*, 128 Cal.App. 2d 750 [276 P.2d 72]), that such testimony was admissible, not to show addiction, which was not charged, but to show knowledge on the part of the accused of the nature of the substance found in his possession. It is his contention that, although he made no such request, the court should have, of its own motion, instructed as to limited purpose for which such evidence was admitted.

It is true that a cautionary instruction would have been appropriate, and that none was given. But appellant made no request for such an instruction. Without a request the court was not bound to give it of its own motion. (*People* v. *Holbrook*, 45 Cal.2d 228 [288 P.2d 1].) Moreover, the jury was clearly informed that appellant was charged only with possession and was not charged with addiction, and that the scar tissue testimony was admitted solely on the issue of knowledge. Thus, when counsel for appellant objected that the scar tissue evidence was irrelevant and not within the charge of possession, the prosecutor stated: ". . . this evidence is admissible to show knowledge of the nature of the narcotic character of the narcotics found in the automobile of the defendant, or in the possession of the defendant, his familiarity with narcotics, the fact he is obviously a narcotic addict are also important to indicate his knowledge." In his closing argument to the jury the prosecutor referred to the fact that the prosecution must prove knowledge of the narcotic nature of the substance found in the accused's possession, then re-

ferred to the scar tissue evidence, and stated: "That was the sole purpose of the admission of that evidence." Although the court did not give a limiting instruction, it did inform the jury that the sole charge against appellant was the one of possession; that it was incumbent on the prosecution to prove Johnson's knowledge of the narcotic nature of the substance found in his possession, and that "Such knowledge or the lack of it may be gained from all of the circumstances in the case." Thus, the failure to give the limiting instruction could not have prejudiced appellant.

The next argument of appellant is also without merit. It is that Hord was an accomplice whose testimony had to be corroborated, and that the court, although not requested to do so, should have so instructed of its own motion. Under some circumstances, where the accomplice's testimony is the basic testimony relied upon, the court must, of its own motion, give the accomplice instructions. (*People* v. *Warren,* 16 Cal.2d 103 [104 P.2d 1024].) ▮ But it is equally well settled that if the appellant's guilt has been established by evidence independent of that of the accomplice, in the absence of a request, it is not prejudicial error to fail to give the instructions on the court's own motion. (*People* v. *Davis,* 43 Cal.2d 661 [276 P.2d 801].) That is this case. The testimony of Hilliard, already set forth, meets the test of the Davis case.

▮ The last contention of appellant is that the prosecutor was guilty of prejudicial misconduct in his argument to the jury. During the argument the prosecutor stated that Johnson was "a dealer in narcotics" and again that "he was a known seller." The prosecutor also stated that unless Johnson was convicted there would be "a mockery" of justice, and that it was up to the jury to prevent what "Johnson had been doing prior to the 12th of May." The prosecutor also stated: "He had needle marks on his arm so he was a user."

When these remarks were made there was no objection to them, nor was any request made then or later that an admonition be given to the jury concerning them. ▮ The law is well settled that the prosecutor is limited to fair comment in his argument to the jury, and when this limitation is exceeded, in a close case, the comments may be prejudicial. (*People* v. *Kirkes,* 39 Cal.2d 719 [249 P.2d 1]; *People* v. *Brophy,* 122 Cal.App.2d 638 [265 P.2d 593]; *People* v. *Ford,* 89 Cal.App. 2d 467 [200 P.2d 867]; *People* v. *Duvernay,* 43 Cal.App.2d 823 [11 P.2d 659].) ▮ But when the prosecutor oversteps the line of fair comment it is the duty of the defense counsel to request an admonition, and the failure to make such a

request precludes appellate consideration of the point if the admonition would have precluded prejudice. (*People* v. *Hampton*, 47 Cal.2d 239 [302 P.2d 300].)

█ The prosecutor is permitted to draw reasonable inferences from the evidence and to comment on them. (*People* v. *Eggers*, 30 Cal.2d 676 [185 P.2d 1].) █ He is permitted wide latitude in discussing the merits of the case, and may state his views as to what the evidence shows as long as he stays within reasonable limits. (*People* v. *Sieber*, 201 Cal. 341 [257 P. 64].)

█ The questioned remarks were within the realm of fair comment. It is a reasonable inference from the needle scars on appellant's arms that he had been a user. The statements about appellant being a "dealer" or "known seller" are also deducible from the record, and arguable on the issue of knowledge. Hord testified that from "his past experience" of hearing people talk about appellant he concluded that there was heroin in the bottle which he tried to hide. Then he testified that he had never "received" or "bought" narcotics from appellant, but when asked on cross-examination whether he had ever "received" narcotics from appellant, he said: "I never bought any from him, if that is what you mean." Any deficiencies on this point were cleared up when the following occurred on the recross-examination of Hord by the defense:

"MR. WILSON: Q. You said that you didn't say in your statement [to the police] that . . . —you saw people come in and buy narcotics from [appellant]? . . .

"THE WITNESS: If it is in the statement I signed and my name is on it, I did say it.

"Q. You did say it. Well now, your testimony is now you never saw anybody buy it?

"A. Well, I said I never seen the narcotics being handed from hand to hand but as I meant to say in the statement that I knew he was—I knew he was—what he was doing and many people would be there, you know."

This testimony was sufficient to justify the prosecutor in inferring that appellant traded in narcotics.

The judgment and order appealed from are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied October 4, 1957, and appellant's petition for a hearing by the Supreme Court was denied October 30, 1957.