[Crim. No. 7609. Second Dist., Div. Four. Dec. 21, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. ALAN BENJAMIN LUCKMAN, Defendant and Appellant.

Alan Benjamin Luckman, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Don G. Kircher, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—A jury returned a verdict of guilty against defendant for grand theft in violation of Penal Code section 487, subdivision 1. A prior conviction of grand theft was alleged in the information and the jury found the prior conviction as alleged was true. Defendant appeared in propria persona. Probation was denied and defendant was sentenced to state prison for the term prescribed by law. Defendant's motion for a new trial was also denied. Defendant appeals in propria persona from the judgment of conviction and the order denying the motion for a new trial.

Defendant made a motion for appointment of counsel on appeal in Division 2 of the Second Appellate District of this court, to which consideration of this appeal had originally been assigned, on May 12, 1961. On that date the court made the following order:

"This court, having considered defendant's application for the appointment of counsel to represent him on the appeal herein, and having made an independent investigation of the record, has determined that it would be neither advantageous to the defendant nor helpful to this court to have counsel appointed. The application is therefore denied. Appellant granted to June 12, 1961, to file appellant's opening brief."

Thereafter, on the 26th day of September, 1961, the appeal of this case was transferred to this division. We have deter-

mined that it would be neither advantageous to defendant nor helpful to this court to have counsel appointed, in view of consideration given defendant's motion by Division 2 of this court and our own independent investigation of the record, which also led us to the same conclusion.

On September 24, 1960, a 1959 15-foot Corvette trailer of the approximate value of $950, owned by William W. Cheney, was parked on service station property at 7600 Winnetka Avenue, Los Angeles, California. The trailer was for rent. It was completely locked and had a sign in the window showing Mr. Cheney's phone number. At about 7:30 p. m., September 26, 1960, Mr. Cheney discovered the trailer was missing. He testified no one had permission to move the trailer and that he reported the loss to police.

At about 6:45 a. m. on September 29, 1960, Police Officers Baker and Parker observed the trailer parked on private property at 6852 Amigo Street in Canoga Park. The officers had received a report in the regular course of police business of the theft of a 1959 Corvette house trailer. Mr. Cheney's report stated that the serial number of the trailer was impressed on the tongue of the trailer. The officers entered on the property and found that the tongue of the trailer was covered with a thick coat of aluminum-like substance. Officer Baker pried off the substance revealing the same number submitted by Mr. Cheney in his report to the police. Other areas used for identifying the trailer were covered by aluminum paint. The license plate on the vehicle was not the same as that on the trailer reported missing.

The officers observed defendant in the trailer and in response to Officer Parker's knock defendant came to the door. He told the officers that it was his trailer and that he had proof of ownership. He presented a bill of sale and said he had been living in this trailer for about two years and that part of the time he had lived in Colorado. The bill of sale indicated the trailer had been manufactured in 1957. Officer Baker asked, "Well, just when in 1957 did you buy this trailer?" Defendant answered, "Somewhere around September." Officer Baker replied that it seemed odd that defendant had the trailer in 1957 when it had not been manufactured until 1959. Defendant was placed under arrest.

Officer Baker then searched defendant's 1952 Buick which was parked directly behind the trailer. In the trunk he discovered a tube of liquid solder, a can of aluminum paint and a brush. The auto and trailer were then impounded.

Mr. Cheney checked the serial numbers, found his registration slip inside the trailer and observed the names on the trailer were painted out with "silver" paint, and the identification tags were stripped.

Later the same morning at the West Valley Police Station, defendant stated to Officer Webb that on the weekend before defendant had been shopping at a market in Reseda. He stated that two men came up to him and asked if he wanted to buy a house trailer. He told them that he did not have the money but that he would like to have one because he was living in his car. Defendant stated the men told him he wouldn't need much money. They then took him to White Oak and Sherman Way where he saw the house trailer in question. Defendant stated that he purchased the trailer for 25 dollars cash and some clothing. The men gave him a bill of sale for the trailer. When asked how he explained the fact that the bill of sale was made October 27, 1957, for $775, when the trailer was stolen the week before, defendant stated that he bought it for $25 and some clothing the previous week, and that "Well, there were some mistakes made on the bill of sale."

 Defendant contends his conviction was based upon illegally obtained evidence. This contention is without merit. The officers received information in the ordinary course of police business that a trailer had been stolen. Approximately three days after the theft the officers noticed a trailer (the same size, make and description as the one described as having been stolen), parked in a private lot. The officers entered the lot, which was near where the theft had occurred, and found that the areas of possible identification had apparently been covered with an aluminum-like substance. When part of this substance was pried from the tongue of the trailer, the serial number underneath was found to be identical to that in the police report.

 The legality of an arrest does not determine the lawfulness of a search incident thereto. (*People* v. *Brown*, 45 Cal. 2d 640, 643 [290 P.2d 528].) The reasonableness of a search is not to be justified by what the search turns up but by appearances to the searcher at the time of his action. So long as the officer reasonably evaluates these appearances and acts accordingly the rights of the accused are adequately safeguarded. (*People* v. *Bly*, 191 Cal.App.2d 352, 356 [12 Cal. Rptr. 542].) Police officers are duty bound to prevent the commission of crime and to assist in its detection. Removal of the substance from the tongue of the trailer was

reasonable under the circumstances. (*People* v. *West*, 144 Cal.App.2d 214, 221 [300 P.2d 729].)

Penal Code section 836 states: "A peace officer may make an arrest . . . without a warrant . . . 3. Whenever he has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed." ■ Reasonable cause is such a state of facts as would lead a man of ordinary care and prudence to believe, or entertain an honest, strong suspicion, that the person in question is guilty of a crime. ■■ In considering the question of reasonable cause for the officer to act, the court looks only to the facts and circumstances presented to the officer at the time he was required to act. (*People* v. *Ingle*, 53 Cal.2d 407, 412, 414 [2 Cal.Rptr. 14, 348 P.2d 577].)

■ The unusual circumstances need only be slight in themselves, if when taken together, under the circumstances present at the time of arrest they are sufficient to arouse the suspicion of a trained police officer. For example, in *People* v. *Williams*, 196 Cal.App.2d 726, 728 [16 Cal.Rptr. 836] : "Other slight circumstances were that defendant drove through a boulevard stop, almost collided with the officers, failed to heed their warnings until he had traveled about a block and then stopped his car out in the street, away from the curb. Also when the cars were stopped, instead of waiting for the officers to approach his car, which is the customary thing, defendant left his car and walked back to the officers' car, evidently hoping that they would not have an opportunity to look into his car. The officers had good grounds for an immediate arrest. . . ."

Defendant next contends the corpus delicti was not proved. This position is untenable. ■ In a criminal case the prosecution is required to prove: that a crime was committed, and that it was committed by the accused. (*People* v. *Jones*, 31 Cal. 565, 567.) ■ The prosecution is not required to establish the corpus delicti with the same degree of certainty as is required to establish the fact of guilt. Slight or prima facie proof is all that is necessary. It can be shown by circumstances or by inferences drawn from the facts. (*People* v. *Theodore*, 174 Cal.App.2d 237, 242 [344 P.2d 393].) The identity of a perpetrator need not be shown. (*People* v. *Mainhurst*, 67 Cal.App.2d 882, 884 [155 P.2d 843].)

Defendant also contends the deputy district attorney committed prejudicial error in his statements to the jury during closing argument. A review of each of these charges, indicates that none has merit and no purpose would be served to set them

forth here. As stated in *People* v. *Johnson,* 153 Cal.App. 2d 564, 571 [314 P.2d 751] : "The prosecutor is permitted to draw reasonable inferences from the evidence and to comment on them. [Citations.] He is permitted wide latitude in discussing the merits of the case and may state his views as to what the evidence shows as long as he stays within reasonable limits."

 There is no merit to defendant's further contention that the deputy district attorney's comments on the defendant's failure to take the stand were improper. The deputy district attorney may properly comment on the fact that defendant has failed or refused to take the stand and that he has failed or refused to explain incriminating facts produced against him and especially in cases where the facts concern matters which are particularly within the knowledge of the defendant, as in the present case. (Cal. Const., art. I, § 13; Pen. Code, § 1323; *People* v. *Sauer,* 163 Cal.App.2d 740, 746-747 [329 P.2d 962].)

 Defendant next contends the court improperly instructed the jury with respect to admissions in that evidence indicating an admission by defendant of the crime charged had been received into evidence and also with respect to his failure to testify. The record does not support this contention. The court read to the jury the standard instructions on these subjects. (CALJIC No. 51, 51-B and 29-A revised.)[1] These in-

---

[1] "It is a constitutional right of a defendant in a criminal trial that he may not be compelled to testify. Thus, whether or not he does testify rests entirely in his own decision. As to any evidence or facts against him which the defendant can reasonably be expected to deny or explain because of facts within his knowledge, if he does not testify *[or if, though he does testify], and he fails to deny or explain such evidence, the jury may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences which reasonably may be drawn therefrom those unfavorable to the defendant are the more probable. The failure of a defendant to deny or explain evidence against him does not, however, create a presumption of guilt or by itself warrant an inference of guilt, nor does it relieve the prosecution of its burden of proving every essential element of the crime and the guilt of the defendant beyond a reasonable doubt." (CALJIC 51.)

"In deciding whether or not to testify, the defendant may choose to rely on the state of the evidence and upon the failure, if any, of the People to prove every essential element of the charge against him, and no lack of testimony on defendant's part will supply a failure of proof by the People so as to support by itself a finding against him on any such essential element." (CALJIC 51-B.)

"In determining the innocence or guilt of a defendant you must not consider any admission *[or confession] of the defendant unless such

*Matter in brackets denotes strike-out.

structions were both sufficient and proper. (*People* v. *King,* 103 Cal.App.2d 122, 127 [229 P.2d 20].)

 In relation to certain alleged misconduct by the prosecutor in his closing argument, defendant neither objected nor requested the trial court to instruct the jury to disregard any such statements. Therefore, defendant may not now urge these alleged errors as prejudicial at the appellate level. (*People* v. *Hampton,* 47 Cal.2d 239, 240, 241 [302 P.2d 300].)

The judgment and order denying defendant's motion for new trial are affirmed.

Burke, P. J., and Balthis, J., concurred.

A petition for a rehearing was denied January 9, 1962, and appellant's petition for a hearing by the Supreme Court was denied February 14, 1962.

---

statement was voluntarily made. Although the court has admitted evidence tending to show that defendant made an admission *[or confession] you must disregard such statement entirely, unless you, yourselves, by your own weighing of all the evidence, your own judging of the credibility of witnesses, and your own reasonable deductions conclude that the alleged admission *[or confession] not only was made, but was voluntary.'' (CALJIC 29-A revised.)

*Matter in brackets denotes strike-out.