[Crim. No. 6296.   Second Dist., Div. One.   Dec. 23, 1958.]

THE PEOPLE, Respondent v. PHILLIP ERROL FLYNN, Appellant.

J. Thomas Russell and Morris Lavine for Appellant.

Stanley Mosk and Edmund G. Brown, Attorneys General, William E. James, Assistant Attorney General, and N. B. Peek, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the district attorney of Los Angeles County, defendant was accused of a violation of section 11714 of the Health and Safety Code in that he did on or about August 19, 1957, furnish marijuana to Kathleen Briggs, a minor. Defendant was also charged with a prior conviction of the crime of rape. He pleaded not guilty to the charge and denied the prior conviction, which was dismissed because the prior conviction was reduced to a misdemeanor by the imposition of a county jail sentence therein. Trial by jury resulted in a conviction of the crime charged in the information. Defendant's motion for a new trial was denied and he was sentenced to state prison. From the judgment of conviction and the order denying his motion for a new trial, defendant prosecutes this appeal.

As to the factual background of this prosecution the record reveals that Kathleen Briggs testified she was 17 years of age. On August 19, 1957, she accepted the invitation of one Mickey Russell "to get high on marijuana." Russell, whom the witness had known for some time, said he knew where they "can get some," and escorted her to the defendant's apartment, where they arrived about 2:30 a.m. The witness had met defendant only once before some weeks prior. Defendant was entertaining another young lady with whom the witness was acquainted. Defendant led the witness and her escort into his bedroom where he got into bed. After a brief conversation, "Mickey (Russell) said to Flynn (defendant) that he wanted to get high" and asked defendant if he had any "pot" (marijuana). Defendant replied, "It's under the dresser." Thereupon, "Mickey walked over to the dresser and reached underneath the dresser and brought a package out." According to the witness, the package was "a brown paper bag," which contained "a brownish-green leafy substance . . . stems like from a plant and . . . seeds." Mickey handed the bag to defendant who removed some white cigarette papers from it and glued two of them together. Defendant "took some of the material out of the bag" and used the papers to roll a cigarette, the ends of which were "tucked in." All four of those present in the room smoked the cigarette, each taking one or

two puffs, inhaling, and then passing it to another. While they were smoking "a couple of the seeds popped." Defendant rolled three or four cigarettes and the parties smoked two. The witness gave the following description as to how defendant made a "cocktail" out of the first butt or "roach": "He took the tobacco out of one end of a regular size cigarette and put the roach inside of the cigarette and rolled the end back up and lit the cigarette and smoked it."

The cigarette had an odor like "burning weed or leaves burning." The witness became "high," "thirsty," "hungry"; her mouth got "dry"; she "felt relaxed."

The witness further testified she had commenced smoking marijuana about June of 1957 and prior to the occasion here in question, she had smoked approximately 20 or 25 such cigarettes. Over the objection of defendant on the ground of the incompetency of Miss Briggs to testify on the subject of marijuana, she was permitted to testify that on the aforesaid previous occasions, the cigarettes were rolled in the same fashion as on the morning with which we are here concerned, that she had heard "that pop noise"; had smelled the same odor of "burning leaves," and had experienced the same sensations of getting "high," dryness of mouth, thirst, hunger and relaxation. That she would generally start to feel "high" in three to six minutes and the effects would last from an hour to an hour and a half depending on how much she smoked. She experienced a feeling of depression as she was "coming down from the marijuana."

After about an hour and a half to two hours the witness and Russell left defendant's apartment.

On cross-examination Miss Briggs testified that she was arrested on August 29 by Officer Allen; that she had not been prosecuted; that no promise of any kind had been made to her by any member of the police department in consideration of her testifying; that she had made 12 to 13 visits to the juvenile bureau of narcotics on each of which she had seen Officer Allen and "about every officer that is down at Georgia Street in the Narcotics Division"; that she had given three statements to police officers, that no promise of immunity had been made by any officer in consideration of her testifying in any other case.

Edwin O. Hall testified that he had been a police officer of the city of Los Angeles continuously from 1941 to the time of the trial, except for approximately three years of military service. Since January of 1949 he had been assigned exclu-

sively to the narcotics division. During his first year and a half in that division he had been "Day Watch Commander" assigning cases and interviewing all persons involved in narcotic matters. He had spent two and one-half years as head of the "Addict Squad" which investigated users of narcotics and filed use or addiction reports. With respect to his experience with and knowledge of marijuana, he testified:

"My training in the effects, appearance, and so forth, of marijuana has been field training by veteran narcotic officers, by reading various governmental publications and pamphlets, and some other publications. I have discussed it with some medical authorities, and then field investigations."

He had also taught and lectured at various colleges and junior colleges throughout the local area and had instructed at the Los Angeles Police Academy. He had lectured to the graduating interns at the College of Osteopathy at General Hospital and had been on a forum, attended by many prominent psychiatrists from throughout the United States, including Dr. Victor Vogell, whom Officer Hall considered to be the foremost authority on narcotics in the United States. Officer Hall had assisted in the writing of a pamphlet entitled "Youth and Narcotics" which was published by the Los Angeles Police Department. He had observed more than 100 individuals actually smoking marijuana and had discussed with certain of them the effects therefrom. He had testified in connection with similar matters in approximately 300 other cases.

Officer Hall testified that in the jargon of the marijuana user, the term "pot" means marijuana; that the color of the marijuana depends on the age and manner of drying of the plant, in the earlier stages the leaves are green, and in the latter it becomes a dark brown; that usually two overlapping cigarette papers are used to roll a marijuana cigarette in order to get "a tighter wrap"; that the ends of a marijuana cigarette are usually "tucked in"; that the marijuana smoker takes "a long, slow drag on the cigarette and holds it within the lungs as long as possible" to get the "maximum effect"; that the odor of a burning marijuana cigarette is similar to that of burning leaves or grass; and that the term "cocktail" signifies a tobacco cigarette containing the marijuana roach in one end. Hall testified that the effects of smoking marijuana were dryness of the throat and mouth, hunger, "light-headedness or, as they say, high," abnormal behavior, thirst, then "(a)s he comes down" a feeling of depression. The intensive-

ness and duration of these sensations depend upon the tolerance of the smoker and the quantity smoked.

In response to a hypothetical question based upon the testimony of Miss Briggs, Hall expressed the opinion, over the objection of defendant on the ground of Hall's "lack of experience," that the "person did receive and smoke marijuana."

On cross-examination, Officer Hall testified in effect that when he entered the narcotics division there was no course offered anywhere on narcotics, therefore a school was started by the police department to train police officers in this field. He eventually "took over" the school which now furnishes men "to teach in the various universities on all phases of narcotics." Defendant's counsel subsequently asked Officer Hall: "Q. You are dean emeritus then of (that school)," to which Hall replied: "A. I like to think so, sir."

On redirect examination Hall stated that there was no local physician and surgeon known to the police department who had sufficient experience with marijuana, as distinguished from opiates, to testify as an expert on marijuana addiction.

Sworn as a witness for the defense, Doctor M. A. Seymon testified that he was a physician and surgeon licensed to practice in this state. The witness testified: "I am a specialist in the treatment of alcoholics and drug addicts." Dr. Seymon was shown the hypothetical question theretofore propounded to the witness, Officer Hall, and when asked if he had an opinion on said question, replied, "My opinion is that this doesn't prove anything at all." Having read the symptoms referred to in the aforesaid question, the witness was asked to approximate from how many other substances those symptoms might emanate or result. He replied, "From many other drugs which have an effect on the sympathetic nervous system." When asked to approximate the number of drugs, if possible, he stated that "it could be ten or twelve drugs that could do the thing, at least."

"Q. Doctor, there is no specific for the test of smoking marijuana, is there? A. No, there is none.

"Q. Just from judging, observing the conduct of a person? A. No, there is not."

On cross-examination, the witness testified as follows:

"Q. By Mr. Amstutz (deputy district attorney): Doctor, you are familiar, are you, with some of the better known, or shall we say, commonly accepted symptoms in relation to people who have smoked marijuana? A. Yes, sir.

"MR. RUSSELL (counsel for defendant): That is objected to, if the court please, on the ground that it is not proper cross-examination.

"THE COURT: Objection is overruled.

"Q. BY MR. AMSTUTZ: Among those symptoms, Doctor, have you ever heard the expression that those who might have smoked it felt high or lightheaded? A. Yes, sir.

"MR. RUSSELL: May my objection continue throughout this line of questioning, if the court please?

"THE COURT: Yes, you may have a running objection to this line of questioning.

"Q. BY MR. AMSTUTZ: Have you also seen listed among those, Doctor, the fact that the mouth may or does become dry? A. Yes, sir.

"Q. Or that there is a feeling of hunger? A. Yes, sir.

"Q. Or that sound or sight might be distorted, or distance? A. Yes, sir.

"Q. Doctor, do you know of any other weedy, if I may use that expression, substance and/or any narcotic which can be smoked or is smoked as a cigarette which would give some or all or any of the symptoms I just referred to? A. No."

Suzanne Russell, called as a witness on behalf of defendant stated she was 17 years of age and that she had known Kathleen Briggs for about eight months. Questioned as to whether she knew of her general reputation in this community for truth, honesty and integrity, the reply was that she did. Upon being asked what was that reputation?; she replied, "Very bad."

Sworn as a witness in his own behalf, defendant testified only to the fact that he had never been convicted of a felony.

As his first ground for reversal of the judgment and order herein appellant urges that the court erred in permitting a lay witness, Officer Hall, to answer a hypothetical question based upon the testimony given by Kathleen Briggs, 17 years of age. In support of this contention, appellant argues that Officer Hall "was not a graduate in any of the sciences and had no personal knowledge of or contact with any aspect of the subject matter of the question, there being no physical substance as an exhibit in evidence and never having seen or observed the witness concerned until weeks later." The gist of appellant's argument seems to be that Officer Hall was not qualified as an expert on marijuana and, though it be conceded he was, nevertheless he could not give an opinion based upon a hypothetical question.

Certain elementary principles relating to the qualifications and the opinion testimony of the expert witness are treated with unusual clarity in the case of *Manney* v. *Housing Authority,* 79 Cal.App.2d 453, 459, 460 [180 P.2d 69], wherein the court, speaking through Mr. Justice Dooling, had this to say: ''The growth of the rule excluding opinion evidence and the development of the two well recognized exceptions to the rule are learnedly traced by Dean Wigmore in 7 Wigmore on Evidence, third edition, pages 1 to 29. The two instances in which the opinions of witnesses are permitted in evidence are: 1. *The opinions of experts are admitted in matters which are not within the common experience of men so that the special knowledge of a person of skill and experience in the particular field may enable him to form an opinion, where men of common experience would not be able to do so.* (Citations.) 2. The opinions of nonexpert witnesses are admitted as a matter of practical necessity when the matters which they have observed are too complex or too subtle to enable them accurately to convey them to court or jury in any other manner. (Citations.)

''For a nonexpert to be competent to give an opinion under the second exception he must be testifying about facts that he has personally observed; *but the expert in any case proper for the reception of expert testimony may give his opinion, although he did not personally observe the facts, basing his opinion upon the facts testified to by other witnesses put to him in the form of hypothetical questions.*'' (Emphasis added.)

Appellant concedes that it is primarily for the trial court, in the exercise of a sound discretion, to determine the competency and qualifications of an expert witness to give his opinion, and that its ruling will not be disturbed upon appeal unless a manifest abuse of that discretion is made clearly to appear (*Huffman* v. *Lindquist,* 37 Cal.2d 465, 476 [234 P.2d 34, 29 A.L.R.2d 485]). And to that may be added that no specified limitations are imposed upon the trial court in determining such qualifications (*People* v. *Horowitz,* 70 Cal. App.2d 675, 689 [161 P.2d 833]). In the case just cited it is further stated, at page 689, ''If the witness exhibits an unusual skill and knowledge gained from study and experience not possessed by the man on the street he is competent to give an opinion.''

With the foregoing rules in mind, we are satisfied from the testimony given by Officer Hall and hereinbefore narrated, that he had a thorough knowledge of marijuana ''. . . gained through experience in interviewing addicts and

study, not possessed by the average man. He thus qualified as an expert and as such his opinion was properly received" (*People* v. *Nunn*, 46 Cal.2d 460, 466, 467 [296 P.2d 813]).

Appellant's argument that an expert cannot give an opinion based upon a hypothetical question is equally devoid of merit. He relies upon the headnote statement contained in *People* v. *Johnson*, 153 Cal.App.2d 564 [314 P.2d 751], that "An expert's opinion must be based on his own personal observations." However, a reading of that case discloses that no hypothetical question was involved.

The court therein simply held that in order for the expert witness properly to testify as to the effects of a test for addiction, known as the Nalline Test, it was necessary for the witness to have "personal knowledge of the practical results and effectiveness of the test" (*People* v. *Johnson, supra,* p. 569). That the court did not hold that expert testimony based upon a hypothetical question was barred is further evidenced by the fact that in support of the necessity of personal observation under the facts of that case, the court cited only the case of *George* v. *Bekins Van & Storage Co.,* 33 Cal.2d 834, and wherein is found, at page 844 [205 P.2d 1037], the following succinct statement of the general rule: "Ordinarily an expert must base his opinion either on facts personally observed or on hypotheses that find support in the evidence." We perceive no error in the ruling of the court that Officer Hall was qualified as an expert on marijuana and was, therefore, entitled to give an opinion based upon the hypothetical question here under consideration.

Appellant's further contention that the hypothetical question propounded to Officer Hall "did not include all of the salient factors adduced by the evidence . . .," cannot be sustained. We have read the record and suffice it to say that in the light thereof, the hypothetical question embraced all the elements of the testimony of the witness Kathleen Briggs, upon which it was based.

It is next contended that the court erred in permitting the witness Kathleen Briggs to "give her opinion that what she smoked in the defendant's apartment was marijuana." No extended discussion is required on this assignment of error because the same contention was advanced in the case of *People* v. *Winston*, 46 Cal.2d 151 [293 P.2d 40], and rejected. In that case two minor girls were permitted to testify that the cigarettes they smoked were marijuana, based on their knowledge of it from previous use. The ruling was sustained,

the court holding that the weight of such testimony was for the jury. In the cited case, the court's summary of the minor girls' testimony as to their previous use of marijuana cigarettes, manner of smoking them and the effects therefrom, indicates a striking similarity to the testimony given by Kathleen Briggs in the instant case.

"Both girls testified that they had frequently smoked marijuana; they described the appearance of a marijuana cigarette, having tucked in ends; they related the custom of smoking such a cigarette in chain fashion in a group, each person taking one or two puffs and inhaling, then passing it to another; and they told of their 'high' feeling after about 15 minutes, their feeling of freedom from their cares, lasting about three to four hours, then their feeling of 'coming down,' that is, their feeling of depression, at which time they became hungry...." (*People* v. *Winston, supra,* p. 156).

Since the challenged testimony in the case now engaging our attention was substantially the same as that given by the minor girls in the Winston case, *supra,* it is obvious that the trial court herein did not err in ruling that the same was admissible. (See also: *People* v. *Candalaria,* 121 Cal.App.2d 686, 689 [264 P.2d 71]; *People* v. *Drake,* 151 Cal.App.2d 28, 44 [310 P.2d 997].)

The next claim of error asserted by appellant is the refusal of the court to permit the witness Kathleen Briggs to be recalled for further cross-examination on the ground that his counsel had just discovered during the preceding noon recess that Miss Briggs had recently testified "... in four other cases, all involving minors and charging the same offense as herein, save one, with the same investigating officers in command." Appellant's counsel stated to the court that he wished to further cross-examine Miss Briggs "... for the sole purpose of showing her bias, her prejudice in this matter, and the implication and the deduction that can be drawn therefrom as to the promise of immunity ...." The motion was denied.

It is conceded by appellant that the recalling of a witness who has been excused by all parties, for further cross-examination is a matter committed to the sound discretion of the court (*People* v. *Moan,* 65 Cal. 532, 536 [4 P. 545]; *Litt* v. *Litt,* 75 Cal.App.2d 242, 244 [170 P.2d 684]; *People* v. *Miller,* 56 Cal.App. 472, 476, 477 [206 P. 89]; 27 Cal.Jur., Witnesses, § 86, p. 111.)

We are persuaded that in the case at bar, the trial court did not abuse its discretion in denying appellant's

motion. During the extensive and intensive cross-examination of Miss Briggs by appellant's counsel when she was on the witness stand, we find the following:

"Q. (By Mr. Russell, appellant's counsel) : I will ask you the question. What were your reasons for going down there (police headquarters) the 12 or 13 times? That is what I feel I have a right to know. A. I would meet Mr. Allen and Mr. Hathaway (police officers) in the mornings at the station to come down to the courthouse to go to court.

"Q. Not just on the Flynn case alone? A. No, sir.

"Q. On how many other cases, that is what I'm trying to find out. We will get at it that way.

"Mr. Amstutz: That is objected to as being immaterial, how many other cases, if the court please?

"The Court: Objection is sustained.

"Q. By Mr. Russell: I am going to assume that you testified in other cases by the process of subtraction, knowing how many times you have been in court on the Flynn case, which is three times, yesterday and today, and at the preliminary examination.

"Were you made any promises by Officer Allen or Officer Hathaway, or anyone else, when you went to court with them on these occasions on these other cases as to the fact that they would not prosecute, file any claim against you, or cause you not to be prosecuted if you testified as you did already, or would testify against Mr. Flynn? A. No, sir.

"Q. Did you expect it? A. No, sir, I did not.

"Q. Do you still expect to be arrested? A. No, I don't.

"Q. Why not? A. Because I haven't done anything to be arrested for, that is why."

From the foregoing it is manifest that appellant's counsel had obtained from the witness information that she had previously been to court with Officer Allen to testify "in many other cases." As to whether any promises of immunity or leniency had been offered for her testimony in such cases, Miss Briggs consistently denied any such promised reward, and with equal vigor asserted that she did not "expect to be arrested" because she had not "done anything to be arrested for." It appears to us that counsel had at considerable length explored the general subject of Miss Briggs' state of mind, not only in connection with the three cases to which he referred, but also as to all "other cases," and that further cross-examination along this line would necessarily be cumulative and repetitious of matters already inquired into.

█ We are further persuaded that though it be assumed that the trial court might well have permitted the recall of Kathleen Briggs for further cross-examination nevertheless, appellant was not prejudiced by the adverse ruling on his motion. On her original cross-examination, the witness frankly admitted her prior use of marijuana, her many interviews with the police officers and her constant, complete and voluntary cooperation with and assistance to them in this and the "other cases" above referred to. From this testimony the jury could well have inferred that the testimony of the witness was subject to the distinct possibility, if not probability, that it was given in the hope of obtaining leniency. Thus, "(p)ractically everything that Defendant was trying to develop through cross-examination along this line (was) . . . before the Jury except an express agreement for leniency, but (Kathleen Briggs) specifically denied that any such promise had been made to (her)." (*People* v. *Winston, supra,* pp. 157, 158.)

█ Appellant's next assignment of error is the failure of the trial court to give an instruction in the language of section 11714 of the Health and Safety Code. He urges that the court should have ". . . read (to the jury) the charging part of the Section (11714) commonly referred to and known as the 'transportation' section . . ." rather than giving ". . . only the second half of Section 11714." In support of his claim appellant argues that "One of the defenses urged by counsel for the defendant was that the witness, Kathleen Briggs, the minor, was a principal in the commission of the instant offense. Said defense was rendered a nullity by the failure of the court to read the charging part of the Section commonly referred to and known as the 'transportation' section. If the witness Briggs were an accomplice in the crime as alleged, the lack of corroboration of her testimony, as required by Section 1111 of the Penal Code, requires the court to give the further requested instruction offered by the defense: 'A court is advised to acquit the defendant on the charge set forth in the Information, etc.——.' " We are satisfied no error was committed by the court in refusing to read to the jury Section 11714 of the Health and Safety Code in its entirety, and particularly in refusing to read that portion thereof referred to by appellant as the "transportation section." The reason advanced by appellant why the instruction should have been given, that is, that therefrom the jury might have considered Miss Briggs an accomplice, finds no

support in the law. In *People* v. *DePaula,* 43 Cal.2d 643, 647 [276 P.2d 600], it was expressly held that ''Since the minor involved is the victim and the offense denounced by Section 11714 of the Health and Safety Code is the harmful act to that victim with the resulting harm to society in general, it necessarily follows that in a prosecution under that section the minor involved cannot be held a principal in the sense of being subject to prosecution for the same identical offense, within the meaning of Section 1111 of the Penal Code.''

We have painstakingly read the reporter's transcript in this case containing some 350 pages; have carefully considered the assignments of error and have read appellant's briefs in connection therewith, from all of which we conclude that none of the rulings complained of militated against the substantial rights of appellant. He had a fair and impartial trial; in fact, the learned trial judge displayed to the defense unusual consideration and patience. The verdict of the jury was based on clear and convincing proof.

The judgment and the order denying defendant's motion for a new trial are, and each is affirmed.

Fourt, J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 18, 1959.