[Crim. No. 7802.   Second Dist., Div. Four.   Oct. 19, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. OTIS L. CLEMMONS, Defendant and Appellant.

Joseph M. Rosen, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—In an information filed by the district attorney of the County of Los Angeles defendant was charged in two counts with violations of section 11502 of the Health and Safety Code, furnishing, administering and giving a narcotic, heroin, to a minor. Defendant entered a plea of not guilty. The jury returned a verdict of guilty as charged on both counts. Motion for new trial and probation were denied, and defendant was sentenced to state prison for the term prescribed by law, sentences on each count to run concurrently. Defendant filed his notice of appeal in propria persona but thereafter, he made a motion in this court to have counsel appointed to represent him on this appeal. This court granted the motion, and counsel was appointed to represent defendant on appeal.

Sharon Lee Converse, age 17, testified she had known defendant for about three weeks prior to December 14, 1960, when defendant came to her home and remained for a couple of hours. During that time she asked defendant if she could have a "fix." She testified that she used the word "fix" to refer to an injection of heroin. Defendant at first refused, and she asked him again for a "fix." Defendant put a powdery substance in a spoon; dissolved it in water; warmed the liquid with matches; drew the liquid into an eye dropper with a needle on it; and injected the needle in her arm. When the needle was removed from her arm she had a sensation of dizziness, followed by a feeling of nausea, causing her to vomit; she then felt relaxed until she went to bed.

On December 21, 1960, defendant was again in her home and she again asked defendant for another "fix." Again, at first he refused, but later acceded and the same procedure was followed. She testified she had the same sensations of dizziness, nausea and relaxation. She attempted to burn the needle marks off her arm by pushing a smoldering cigarette into the marks left by the injection.

A kit was introduced into evidence, commonly described as a narcotic kit, consisting of an eye dropper, the bowl of a spoon and a needle. The victim identified these objects as being similar to the ones used by defendant on December 14th and 21st.

A narcotics officer from the sheriff's office testified to his extensive experience in the field of narcotics, covering approximately two thousand arrests. He examined the victim on December 21st in the sheriff's sub-station and observed the puncture wounds on the left arm under the cigarette burn.

The officer further testified he had been in attendance in the courtroom throughout the testimony of this victim and had heard all of the testimony concerning the dizziness, nausea and relaxation following the injection into her arm. He stated, as an expert, that in his opinion heroin had been injected into the victim's arm.[1]

Defendant testified in his own behalf. He stated that he was in the home of the witness Sharon Lee Converse only once while looking for his sister and was there only a few minutes. He denied having ever administered narcotics to her at any time. He admitted having a conversation with the arresting officer in which he admitted the narcotic kit was his.

Defendant contends the trial court committed error in its coercion of the witness, Sharon Lee Converse, to testify. A review of the record in this regard shows that in the trial which began on March 29, 1961, the victim, Sharon Lee Converse, was called to the stand to testify. She refused to answer the questions, and the court asked her on what grounds. She stated she had no grounds. The matter was continued for the second day, and the victim was again called to the stand. The court appointed counsel for her, and instructed counsel to advise her of her constitutional rights. The witness was granted immunity under section 1324 of the Penal Code and was advised by both her counsel and the court that she would have complete immunity from prosecution. Again, she refused to testify. She was then held in contempt, and the trial was continued to April 5, 1961. When the trial was resumed on that date, the witness still refused to testify even though advised to do so by her counsel. The court again held the witness in contempt and transferred her to juvenile court for further action.

The prosecution requested a continuance to April 26, 1961, to give the witness a further opportunity to purge herself of contempt. The court made a finding of good cause for the continuance over the objection of defendant. The juvenile court found the witness unfit for juvenile court law and remanded her back to the trial judge for further proceedings. She was brought into court and with her counsel present again refused to purge herself of the contempt charges. She was

---

[1]The sole objection raised to the testimony of the officer being received was on the ground that he did not qualify as an expert. This was properly overruled. No objection was made as to the lack of a hypothetical question. (See *People* v. *Flynn*, 166 Cal.App.2d 501, 510 [333 P.2d 37].)

sentenced to jail until she purged herself of the contempt. Later that day, she was returned to court with her counsel at her request and indicated she wished to purge herself of the contempt charges. The judge ordered her returned to court on April 26, 1961, the date to which the trial had been continued. On the latter date the witness testified, was purged of the contempt and released to the custody of the sheriff for return to the California Youth Authority.

There was no error in the coercive sentence imposed on the witness by the trial court. ■ Defendant claims the maximum sentence should have been six months, since contempt is merely a misdemeanor. This argument is not sound. The same point was raised in *In re Salkin,* 5 Cal.App.2d 436, 437 [42 P.2d 1041]. In that case, the judge found Salkin in contempt and ordered that he be confined in the county jail until he complied with the court's order. The court held he was never senteced to confinement in the county jail and sections 19a and 1205 Penal Code did not apply, even though such conditional incarceration extended beyond one year. ■ ''[T]he power of the court in the premises is attested by the ruling in the case of *Burns* v. *Superior Court,* 140 Cal. 1 [73 P. 597], wherein it was held that, aside from statutory authority therefor, a court of general jurisdiction has inherent power to punish for contempt persons who obstruct or interfere with its authority. . . .''

■ Defendant next contends the coerced testimony of Sharon Lee Converse was a denial of the due process right of appellant under the United States Constitution and the Constitution of the State of California. We find no merit in this contention. ''Such a situation involves an issue between plaintiff's witness and the State. The determination of such issue is not a matter about which the defendant may be heard to complain. Such an incident may provide argument as to credibility but it in no manner affects the rights of the defendant.'' (*People* v. *Bernstein,* 70 Cal.App.2d 462, 466 [161 P.2d 381] ; *People* v. *Judson,* 128 Cal.App. 768, 773 [18 P.2d 379].)

■ Defendant next contends the prosecution did not establish the actual commission of the offense by defendant by substantial testimony. The brief review of the evidence produced, as heretofore given, adequately disposes of this contention. ■ ''The prosecution need not physically produce the narcotic. It may prove that the substance was a narcotic by the testimony of the user and by the testimony of a doctor that, in his opinion, the substance used was a nar-

cotic." (*People* v. *Tipton,* 124 Cal.App.2d 213, 217 [268 P.2d 196]; see also *People* v. *Candalaria,* 121 Cal.App.2d 686 [264 P.2d 71].)

The victim here who had former experience with narcotics and especially with heroin, described the sensations and effects of the injections. An expert in this field, the narcotics officer, was qualified to testify that in his opinion, based on his experience, the substance injected into Sharon's arm was heroin. As stated in *People* v. *Mack,* 169 Cal.App.2d 825, 830 [338 P.2d 25]: "The qualification of a person to testify as an expert witness is a matter within the sound discretion of the trial court; and its determination, in the absence of a clear abuse, will not be disturbed by a reviewing court." (To the same effect, see *People* v. *Rios,* 127 Cal. App.2d 620 [274 P.2d 163].)

Defendant further contends the continuances ordered by the court during the course of the trial were a denial to defendant of his right to a speedy trial and constituted a violation of due process guaranteed by the Constitution of the State of California. With this contention we disagree. "The granting or refusing of a continuance rests in the sound discretion of the trial court [citations]." (*People* v. *DeLosa,* 184 Cal.App.2d 681, 684 [7 Cal.Rptr. 753].) There was good cause shown for the continuances granted by the court in this case. It is to be noted that the information was filed January 31, 1961. The defendant was arraigned on February 6, 1961, and the trial date set for March 14, 1961. On the date of trial defendant requested a continuance to March 28, 1961, which request was granted. The trial commenced on March 28. On March 30 it was continued to April 5 and subsequently to April 26, 1961, by reason of the refusal of the principal witness to give testimony. The trial was completed on April 27, 1961, at which time the jury returned a verdict of guilty. The trial was commenced within the 60-day statutory period and, as indicated, there was no unreasonable delay in its completion under the circumstances; and therefore, no violation of due process.

Judgment of conviction affirmed.

Burke, P. J., and Ford, J.,* concurred.

---

*Assigned by Chairman of Judicial Council.