[Crim. No. 3434.   Third Dist.   July 16, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. ALBERT
GURROLA, Defendant and Appellant.

Bill Holden, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Edward Hinz, Jr., Deputy Attorney General, for Plaintiff and Respondent.

SCHOTTKY, J.—Albert Gurrola was convicted by a jury of driving a vehicle upon a public highway while under the influence of narcotics (Veh. Code, § 23105) and of transportation of a narcotic (heroin) (Health & Saf. Code, § 11501). He has appealed from the judgment, the sentence, and from the order of the court denying his motion for a new trial. The sentence and the order being nonappealable the purported appeal therefrom is hereby dismissed.

Appellant makes a number of contentions but before discussing them we shall give a brief summary of the evidence as shown by the record.

About 6 p.m. on the evening of July 5, 1962, Officer Richard Henry Marty of the California Highway Patrol saw a 1956 Buick automobile being driven in an erratic manner on El Camino Avenue in Sacramento County. After a short pursuit the driver of the Buick, appellant Albert Gurrola, stopped his car. Gurrola appeared to be extremely nervous. He had not been drinking. The officer called for other police officers to come to his assistance. After the other officers arrived the Buick automobile was searched with Gurrola's consent. A brown paper bag was found under the front seat of the car. It contained 17 rubber balloons and one contraceptive device, each of which contained a powdery substance, later determined to be heroin. While the car was being searched, Gurrola ran from the scene. He was apprehended and taken to the sheriff's office where Gurrola in a conversation with Hubert Ray Sutton, a special agent of the California Bureau of Narcotic Enforcement, admitted that he had used narcotics in the past but asserted he had not recently.

The testimony of Agent Sutton which was given at the preliminary examination was read to the jury. (Sutton was deceased at the time of the trial.) Sutton examined Gurrola's eyes with a flashlight about 8 p.m., and according to his testimony both of the eyes failed to react to light—both pupils were frozen. He also saw fresh needle marks on the "inner left elbow." Sutton also examined Gurrola's pupils about 11 p.m., and this time he got a very slight reaction. Gurrola appeared to Sutton to be in a "physical condition of other addicts that I have known in the past that were coming out from under the influence of use of narcotics or heroin." It was Sutton's opinion that Gurrola was under the influence of narcotics both times he examined him.

Gurrola testified in his own behalf. He admitted that he had used narcotics in the past but denied recent use of nar-

cotics. He disclaimed ownership or knowledge of the bag containing the heroin which was found in his car.

Other evidence will be referred to in the course of this opinion.

■ Appellant's first contention is that the state did not prove appellant was driving on a highway while under the influence of narcotics as required by section 23105 of the Vehicle Code. This contention is devoid of merit. The term "highway" includes a street. (Veh. Code, § 360.) A street is a way or place of whatever nature, publicly maintained and open to the use of the public for the purposes of vehicular traffic. (Veh. Code, § 590.) ■ The courts in this state have taken judicial notice of matters of common knowledge within the jurisdiction which are certain and indisputable. (*People* v. *Tossetti*, 107 Cal.App. 7 [289 P. 881]; *Varcoe* v. *Lee*, 180 Cal. 338 [181 P. 223]; *People* v. *Kutz*, 187 Cal.App.2d 431 [9 Cal.Rptr. 626].) ■ It is a matter of common knowledge that El Camino Avenue is a public street, and the trial court could take judicial notice of that fact.

■ Appellant contends also that it was improper to obtain a conviction under section 11501 of the Health and Safety Code for transportation unless it were shown that the fact of transportation was linked to some other aspect of the crimes mentioned in the section. The section reads in part:

"Except as otherwise provided in this division, every person who transports, imports into this State, sells, furnishes, administers or gives away, or offers to transport, import into this State, sell, furnish, administer, or give away, or attempts to import into this State or transport any narcotic other than marijuana except upon the written prescription of a physician, dentist, podiatrist, or veterinarian licensed to practice in this State shall be punished by imprisonment in the state prison from five years to life, and shall not be eligible for release upon completion of sentence, or on parole, or on any other basis until he has served not less than three years in prison."

This contention cannot be sustained. The prohibitions in the statute are in the disjunctive and not in the conjunctive. The statute clearly makes transportation a crime. In *People* v. *Watkins*, 96 Cal.App.2d 74, 76-77 [214 P.2d 414], the court in affirming a conviction for transportation of marijuana under former section 11500 of the Health and Safety Code recognized transportation as a separate crime. (See

also *People* v. *Coleman,* 100 Cal.App.2d 797 [224 P.2d 837].)

A conviction for transportation of heroin pursuant to the present section 11501 of the Health and Safety Code was sustained in *People* v. *Burke,* 208 Cal.App.2d 146 [24 Cal. Rptr. 912], where appellant contended that at most possession of narcotics was shown (Health & Saf. Code, § 11500) and not transportation (§ 11501).

Appellant contends also that it was error to permit Sutton, the narcotics agent, to give his opinion that appellant was under the influence of narcotics, or to give his opinion that appellant exhibited physical symptoms similar to those of a person withdrawing from narcotics. Sutton had been a narcotics agent for four years during which period he had examined many narcotic addicts. In his work he had come in contact with narcotic users, addicts, purchasers and peddlers. He had observed people in all stages of being under the influence of narcotics.

There is no rigid classification of expert and non-expert witnesses. Expert witnesses do not have to be professional men. (3 Witkin, Cal. Evidence, § 188, p. 207.) Any person who has the requisite knowledge or skill may be qualified as an expert. It may be a police officer in a narcotic case. (*People* v. *Flynn,* 166 Cal.App.2d 501 [333 P.2d 37].)

The law is clear that the trial court determines the competency and qualifications of an expert witness. Its ruling will not be disturbed on appeal unless a manifest abuse of that discretion clearly appears. (*People* v. *Flynn, supra,* p. 509; *Huffman* v. *Lindquist,* 37 Cal.2d 465, 476-477 [234 P.2d 34, 29 A.L.R.2d 485]; *People* v. *Clemmons,* 208 Cal. App.2d 696, 701 [25 Cal.Rptr. 467]; *People* v. *Mack,* 169 Cal. App.2d 825, 830 [338 P.2d 25].)

In *People* v. *Hernandez,* 188 Cal.App.2d 248 [10 Cal.Rptr. 267], at page 250, the court states as follows:

''In ruling upon the qualifications of a witness who is called to give expert testimony, the court enjoys a broad discretion. (19 Cal.Jur.2d, § 296, p. 23.) In the two months the officer had lived with narcotics addicts he had an unusually good opportunity to observe the objective manifestations of the use of narcotics and by his training and experience was shown to be sufficiently qualified. (See *People* v. *Mack,* 169 Cal.App.2d 825 [338 P.2d 25].) ''

We are satisfied that the court did not err in admitting the testimony of Agent Sutton. Furthermore, Dr. McIntosh, who was experienced in the examination and treatment of

narcotic users, stated in response to a hypothetical question in which appellant's symptoms were described that such a person would be under the influence of narcotics.

There is no merit in appellant's contention that he was prejudiced by being subjected to prolonged cross-examination as to his prior use of narcotics. He did on direct examination admit prior use. He denied recent use, denied knowledge of the heroin packets, and testified that he had never seen balloons containing narcotics. The extent of cross-examination rests largely in the sound discretion of the trial judge. (See *McLaughlin* v. *Municipal Court of Roxbury Dist.*, 308 Mass. 397, 404 [32 N.E.2d 266, 270]; *People* v. *Morlock*, 46 Cal.2d 141 [292 P.2d 897]; 3 Wigmore on Evidence (3d ed. 1940) p. 149, § 783.)

In the case at bench appellant admitted on the stand the prior use of narcotics during three periods between 1952 and 1959. This testimony of appellant was relevant as tending to overcome his assertion that he was not aware that heroin was under the front seat of his vehicle or that he knew its narcotics nature.

It was therefore proper to cross-examine appellant as to his prior use of narcotics. Furthermore, this examination was proper to attack appellant's credibility as appellant asserted he had not used narcotics since 1960, that he had never seen such a substance, and that he had never seen balloons containing narcotics.

Appellant contends also that People's Exhibit No. 1, the heroin found in his automobile, was in the possession of the officers as a result of an unlawful search and seizure. This contention is without merit.

Appellant did not object to the admission of the heroin into evidence on the ground of illegal search and seizure, but the objection was merely that there was "no evidence to sustain the fact that there was constant possession of these objects, the necessary link of chain of possession is missing." The law is clear that where no question of search and seizure was raised in the trial court the appellant cannot raise it for the first time on appeal. (*People* v. *Prado*, 190 Cal.App.2d 374 [12 Cal.Rptr. 141]; *People* v. *Wells*, 187 Cal.App.2d 324, 334 [9 Cal.Rptr. 384]; *People* v. *Hyde*, 51 Cal.2d 152 [331 P.2d 42]; *People* v. *Richardson*, 51 Cal.2d 445 [334 P.2d 573].)

Furthermore, the record demonstrates that the appellant consented to the search. Appellant admitted on di-

rect examination by his counsel that he consented to the search. Therefore, even if we assume that the issue was properly raised for the first time on appeal, the admission of the heroin was proper. (*People* v. *Michael,* 45 Cal.2d 751, 753-754 [290 P.2d 852]; *People* v. *Gorg,* 45 Cal.2d 776, 783 [291 P.2d 469]; *People* v. *Stewart,* 144 Cal.App.2d 555, 559 [301 P.2d 301]; *People* v. *Lujan,* 141 Cal.App.2d 143, 147 [296 P.2d 93].)

The most serious contention of appellant is that the court erred in permitting the deputy district attorney to bring out during the examination of Officer Marty that appellant had previously been arrested for narcotics violations. This testimony follows:

"Q. Officer, you indicated that you obtained several checks, as you referred to them, by radio from your motorcycle; you mentioned a warrant check, would you explain what that is? A. Well, I ran a Sheriff's—I checked through the Sheriff's Office to see if there were any wants on the Defendant, to see if he was wanted by the Sheriff's Office for any reason. Q. What was the result? A. There were no wants by the Sheriff's Office. Q. You stated also that you, in the same manner, obtained a C. I. and I. check; what is that? A. Criminal record of the person. Q. Now, was—the response to your C. I. and I. received by the Sheriff to search Mr. Gurrola's vehicle was undertaken? A. Yes, sir, it was. Q. How long had you had Mr. Gurrola stopped when you received the report from the C. I. and I. or from the radio reporting what the C. I. and I. had to say? A. Oh, it was maybe ten minutes or so after I stopped him. Q. What was the substance of the information conveyed to you by radio from C. I. and I. in relation to Mr. Gurrola? A. He had several arrests, some for narcotics. MR. VIETS: I object, your Honor, on the ground this is hearsay and also puts a citation —I cite counsel for prejudicial misconduct, alluding to prior offenses Mr. Gurrola may or may not have had. THE COURT: Yes. The objection will be sustained. MR. CAVANAUGH: May I be heard on that point outside the presence of the Jury? THE COURT: I will set my ruling aside and give you an opportunity to argue it."

After a discussion between counsel and the court, the court reserved its ruling and the trial proceeded. The next morning the court sustained the objection and granted defense counsel's motion to strike. The court then told the jury:

"THE COURT: Mr. Marty said he contacted that Agency to

see if he, the Defendant, was wanted for any particular offense, and he answered they reported, "No he wasn't,' as I recall. Then as I recall, there was a further question: 'What did he tell you,' and before there was an objection to that question, the witness, Mr. Marty, answered. As I recall, he said they reported that there has—the Defendant had been arrested previously for—what was his testimony? MR. CAVANAUGH: Narcotics violation. THE COURT: As soon as that answer was given, the defense moved to strike it and objected to the question. THE COURT struck the answer and sustained the objection, and then Mr. Cavanaugh spoke up and said he had some law he wanted to submit to the question and wanted to argue it. So, in order to give Mr. Cavanaugh time to argue the matter, I set aside the ruling and the matter was argued out of your presence. THE COURT has decided the matter and has decided the answer should be stricken; that is, the portion of the answer in which Mr. Marty said it was reported to him that the Defendant had been arrested previously for narcotics violation. I strike that portion of the answer and I sustain the objection to the question. That answer was extremely prejudicial to the Defendant, has no bearing at all upon his guilt in the instant case, and you are to disregard it entirely and not to consider it in anyway at all for any purpose. The evidence is incompetent in all respects. It is sometimes difficult for Juries to eradicate from their minds evidence that they have heard, even though the Jury is admonished by the Court to disregard and strike it from the record, but you must do that. You are judges and you are not advocates. You are in the same position as the Court. We have to do this, and this intelligent Jury is capable of doing it. It is unfair to the Defendant to consider that evidence in any way at all with his connection with the present offense. Do you wish me to go further?

"MR. VIETS: [Defense counsel] I believe that is sufficient, and the Jury is aware that this evidence is not admissible. THE COURT: I wish to make this, Mr. Viets, and I am sure the Court will agree that Mr. Cavanaugh in asking that question was doing what he thought was right, and it so happens his purpose in offering it dealt with a legal matter with which the Jury has no concern at all. It is more directed as—the approach was directed to the search and seizure and the reasonableness, and so on. That is not your function, and so I want to make it clear, the evidence is out. The question is out, and the answer is out, and I again admonish you not

to consider it for any purpose at all in this proceedings. . . ."

Appellant contends most earnestly that in eliciting from Officer Marty and getting into the record the statement that the C. I. and I. reported that appellant "had several arrests, some for narcotics" the district attorney was guilty of such prejudicial misconduct as to require a reversal of the judgment. He contends further that the striking out of the answer by the court and the court's admonition to the jury to disregard the answer could not cure the error, but that, as appears from the record, it only served to emphasize the harmful effect of the answer.

The trial court in its admonition to the jury to disregard the answer correctly stated that the evidence was incompetent and that it was extremely prejudicial to the defendant. It is evident that the deputy district attorney was of the opinion that he was entitled to have the answer in evidence because he sought to justify it in his argument to the court outside of the presence of the jury.

It was, of course, improper for the deputy district attorney to get before the jury in the manner which he did the fact that he had received a report from the C. I. and I. that appellant had several arrests for narcotics, and it cannot be doubted that in a case such as the one at bench such evidence would be extremely damaging to a defendant. The question that we must determine is whether or not the error requires a reversal of the judgment. What was said in *People* v. *Hardy*, 33 Cal.2d 52 [198 P.2d 865], at page 61, is apposite:

". . . Under ordinary circumstances the trial court is permitted to correct an error in admitting improper evidence by ordering it stricken from the record and admonishing the jury to disregard it, and the jury is presumed to obey the instruction. (*People* v. *Prather*, 134 Cal. 436, 439 [66 P. 589, 863]; *People* v. *Sourisseau*, 62 Cal.App.2d 917, 929 [145 P.2d 916].) However, as was stated in *People* v. *McKelvey*, 85 Cal.App. 769, at page 771 [260 P. 397], 'It has also been held that in certain cases where the incompetent evidence goes to the main issue and where the proof of defendant's guilt is not clear and convincing, that the error in admitting the incompetent evidence cannot be cured by striking out and instructing the jury to disregard that evidence.' . . ."

In *People* v. *Watson*, 46 Cal.2d 818 [299 P.2d 243], the court said at page 836:

"Giving due consideration to the varying language heretofore employed in relating the constitutional amendment to the particular situations involved, it appears that the test generally applicable may be stated as follows: That a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error. Phrasing the test in this language avoids any complexity which may be said to result from the language employed in the double negative approach, and such phrasing seems to coincide with the affirmative language used in the constitutional provision."

And as stated in the recent case of *Bridgman* v. *Safeway Stores, Inc.,* 53 Cal.2d 443 [2 Cal.Rptr. 146, 348 P.2d 696], at page 450: ". . . No precise formula can be drawn for deciding whether an error in instructions has resulted in a miscarriage of justice. For this purpose the appellate court must review the entire record, including the evidence, and in each instance the determination whether the error requires a reversal depends upon all the circumstances of the particular case. (*Alarid* v. *Vanier,* 50 Cal.2d 617, 625 [327 P.2d 897]; *Butigan* v. *Yellow Cab Co.,* 49 Cal.2d 652, 660-661 [320 P.2d 500].)"

Applying these rules to the case at bench, we have concluded after a careful study of the entire record that the evidence of appellant's guilt was so strong that the jury would have found him guilty if the improper evidence had not been introduced. Therefore, notwithstanding the error hereinbefore noted, no miscarriage of justice has resulted.

The judgment is affirmed.

Pierce, P. J., and Friedman, J., concurred.