123 N.J. Super. 322 (1973)
302 A.2d 561
STATE OF NEW JERSEY, PLAINTIFF,
v.
MICHAEL A. TIERNAN, AND JAMES W. BROWN, JR., DEFENDANTS.
Superior Court of New Jersey, Cape May County Court.
Decided March 13, 1973.
*323 Mr. Edwin W. Bradway argued the cause for plaintiff.
Mr. Kenneth E. Calloway argued the cause for defendants.
GRUCCIO, J.C.C.
This is an appeal from a Municipal Court proceeding finding appellant, Michael A. Tiernan, guilty of operating a vehicle while under the influence of drugs contra to N.J.S.A. 39:4-50.
The facts surrounding the conviction are thus: an officer for the City of North Wildwood observed defendant operating a vehicle on August 7, 1972 at 2:40 in the morning. Defendant's car was noticed "to force" another car off the road. Subsequent to the officer's approaching and the defendant leaving the car towards the second vehicle, the defendant was unable to satisfy a request for a driver's license and registration, saying they were back in the car.
During the time on the police force, the police officer testified that he had seen "hundreds" of persons under the influence of alcohol. In addition, the officer testified to his having seen "a great number" of persons under the influence of controlled dangerous substances. As preparation for this aspect of police work, the officer indicated completion of the mandatory academy training in narcotics as well as a week long narcotics course at Sea Girt, New Jersey. The officer was not a pharmacologist, nor a doctor, nor qualified to prescribe drugs. During this part of the officer's testimony, a salient feature of the case was revealed; that there is a pharmacologist on the Wildwood Police Department whose skills and training are employed in the detection of drug cases throughout Cape May County. No blood, urine or saliva analysis was made.
*324 The officer proceeded to describe his observations of Mr. Tiernan's physical condition. The defendant's eyes were said to be glazed, he swayed and though his speech was lucid and conversant, it was described as slow. As a result, defendant was arrested for violating the laws of New Jersey proscribing the driving of a vehicle while under the influence of alcohol.
Upon arrival at police headquarters, a breathalyzer was administered the defendant. The readings indicated at best a negligible amount of blood alcohol. The defendant was then given a series of Romberg type tests to determine agility, and completed them satisfactorily though cumbersomely. Following the officer's testimony as to the failure of defendant's eyes to respond to light, defense counsel's motion to strike the testimony as being without the province of the officer's skill and knowledge, was denied.
The failure to discover sufficient blood alcohol resulted in a change of charges from driving while under the influence of alcohol to driving while under the influence of drugs. The failure to specify the substance producing the observed effects demonstrates the patent inability of the policeman to discern between an individual under the influence of a narcotic drug and one under the influence of alcohol. There was no report as to a medical examination. Upon the testimony of the officer that defendant must have been under the influence of something, the Municipal Court Judge determined that this something was drugs and found the defendant, Tiernan, in violation of N.J.S.A. 39:4-50.
The court is confronted with two germane and interconnected inquiries. Did the State sustain its burden of proving beyond a reasonable doubt that the defendant was in fact under the influence of a narcotic drug as proscribed by the statute? Is a police officer qualified to testify as to one's being under the influence of drugs with no further training than a one week's course with no corroborating medical evidence?
*325 A prosecution under N.J.S.A. 39:4-50 has been deemed a quasi-criminal proceeding and as such "the State has the burden of establishing the guilt of the defendant beyond a reasonable doubt." State v. Siegmeister, 106 N.J. Super. 577 (1969) citing State v. Ingram, 67 N.J. Super. 21 (App. Div.) (1961). The State in the case sub judice has clearly failed to meet this requirement.
An analysis of the statute and the case law development reveals an obvious distinction between the offenses of driving while under the influenec of alcohol and while driving under the influence of drugs although both proscriptions are contained in one statutory provision. N.J.S.A. 39:4-50.1 is a legislatively created presumption of intoxication upon the results received from a duly administered breathalyzer test. State v. Magai, 96 N.J. Super. 109 (1967). This presumption pertains solely to alcohol. The legislature was obviously aware that the sobriety or lack thereof is determinable in common parlance by a number of factors; alcohol on the breath, physical instability and the like. The courts likewise have followed this direction in determining that lay opinion may be proffered as to whether an individual was intoxicated.
Lister v. England, 195 A.2d 260 (D.C. App. 1963) noted the purpose of creating statutory presumptions of intoxication was to eliminate the necessity of having an expert witness testify. State v. Guerrido, 60 N.J. Super. 505 (1960) arrived at a similar conclusion by explaining that "although examination by a physician or tests to determine intoxication, or both, are usually given, there is ... no persuasive reason [why] a state of intoxication [under] ... 39: 4-50 cannot factually be established by lay evidence." There is no skill or experience necessary in such a determination. See State v. Emery, 27 N.J. 348 (1958).
This area of lay opinion, as leading to an inference of intoxication, is carefully scrutinized by the judiciary in order to prevent an overextension, and an incursion into the realm of expert testimony. State v. Siegmeister, supra. *326 Where testimony is in conflict as to one being under the influence and there were no tests administered by a physician who could testify using his special knowledge and training, a conviction for being under the influence could not be sustained. "In the case [where the testimony of] ordinary policemen [is relied upon], there should be some foundation laid in their testimony." State v. Morton, 74 N.J. Super. 528, 537, aff'd 39 N.J. 512 (1963).
Although the court agrees that lay testimony is admissible as to intoxication, I find no reported decision holding that the presence of drugs and being under their influence is established by other than expert testimony. Furthermore, the brief training period undertaken by the officer is deemed to be insufficient to warrant his qualification as an expert.
Black's law dictionary defines expert witnesses thusly, "men of science educated in the art or persons possessing special or peculiar knowledge acquired from practical experience ... One possessing with reference to a particular subject, knowledge not acquired by ordinary persons."
Likewise, the American Law Institute Model Code of Evidence states that a judge may prohibit lay testimony in the form of an opinion including inferences if "to draw such inferences requires a special knowledge, skill, experience or training ..." 2 Criminal Procedure Sourcebook PLI 613 (1942). Rule 402 of that code describes an expert as qualified "if the judge finds that to perceive, know or understand the matters concerning which the witness is to testify requires special knowledge, skill, experience or training" and the witness possesses such characteristics. Ibid. at 614.
New Jersey Rules of Evidence, Rule 56 pertains to the subjects of lay opinion testimony. In the annotated comment accompanying the rule, it is noted "a non-expert may give his opinion on matters of common knowledge and observation." (emphasis added) Citing Searles v. Public Service R.Y. Co., 100 N.J.L. 222 (Sup. Ct. 1924) an early decision upholding a layman's ability to determine intoxication. *327 The comment further warns that "lay opinion testimony may not cross into the realm of expert testimony." N.J. Rules of Evidence, Gann Law Books 1972 Edition, 227-228. See Nesta v. Meyer, 100 N.J. Super. 434 (App. Div. 1968); DiNizio v. Burzynski, 81 N.J. Super. 267 (App. Div. 1963).
In light of legislative dictates and judicial rule construction, this court must reach the conclusion that a police officer, absent training of a paramedical status, does not possess the expertise by which to determine the substance, if any, other than alcohol, which seems to have reacted on a defendant's physical condition. The court is not impinging on the well recognized police power of the State "to regulate or to bar vehicle operation on the highways by narcotics users." State v. Smith, 58 N.J. 202, 214 (1971) citing Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). Rather the court seeks to implement the design of the Legislature.
N.J.S.A. 39:4-50 speaks in terms of intoxicating liquors and narcotic, hallucinogenic and habit forming drugs. While any beverage possessing alcohol fits the former proscription, the latter is in need of specificity. Further, N.J.S.A. 39:4-50.1 creates a statutory presumption of intoxication in accordance with various blood alcohol readings. There is no such presumption created for the use of drugs, nor is there a scientific test alluded to. Finally, the courts have determined that symptoms of inebriation are recognizable to the lay public, and in view of the lack of specificity in the statute, this is warranted. The court believes that in order to satisfy the delineated statutory proscription more than mere lay testimony as to one's physical condition must be profferred. The presence of a miniscule amount of blood alcohol does not automatically lead to the inference of being under the influence of a narcotic drug. Indeed, the specificity of the statute regarding the narcotic nature of the drug precludes such an inference from ever arriving. There is, then, absent other evidence, the obvious need to have a determination *328 reached by one possessing expertise. Were the decision otherwise, the preservation of the standard of guilt beyond a reasonable doubt would no longer be a viable tenet of criminal and quasi-criminal prosecutions.
In People v. Vignoli, 213 Cal. App.2d 855, 29 Cal. Rptr. 260 (1963), the court upheld a conviction for operating a motor vehicle while under the influence of drugs following the testimony of a police officer that the defendant was extremely drowsy after his arrest for speeding and driving without a license and marks and scabs were found on defendant's arms, one of which appeared recent. There was further testimony by an examining physician that he, too, had noticed needle marks, one of which, in his opinion was made within the last 6-10 hours. The doctor noted defendant's eyes were constricted and on the assumption that there had been no drugs taken since the arrest, he concluded the defendant to have been under the influence of narcotic drugs at the time of the arrest. Great emphasis was placed on the credibility of the physician's testimony; the officer's testimony being viewed as corroboration. See also People v. Gurrola, 218 Cal. App.2d 349, 32 Cal. Rptr. 368 (1963). People v. Davis, 270 Cal. App.2d 197, 75 Cal. Rptr. 627 (1967) overturned a conviction for driving while under the influence of drugs when there was no expert opinion nor observation that defendant lacked alertness, judgment and coordination needed to operate a motor vehicle.
The case sub judice is devoid of the elements tending to verify a lay opinion. There were no discernible marks about the defendant's arms or body, or other recognized indicia of drug use. There was no proof of deleterious effects on the ability to drive a vehicle. There was no admission by the defendant of any narcotic drug consumption, nor were any drugs found that could be connected with this defendant. No doctor or pharmacologist or other medical, paramedical or scientific person was called in to examine the defendant. In fact, the officer admitted upon cross-examination that the charge of being under the influence of drugs *329 was made only as the result of a failure to create a presumption of intoxication through a breathalyzer reading, and the defendant's swaying when he walked. There is nothing in the record that convinces the court that any of the other contingencies which could have caused such a reaction were examined or considered.
The court is cognizant of the fact that the defendant was initially arrested for being under the influence of alcohol. While the charge was changed before trial, it is compelling to note that our sister jurisdiction, Pennsylvania, had prohibited a motorist, acquitted of being under the influence of alcohol, from later being tried for being under the influence of drugs on the same set of facts. Commonwealth v. Bishop, 182 Pa. Super. 151, 126 A.2d 533 (1956). The Pennsylvania statute, 75 P.S. section 1037, reads similar to the New Jersey provision. The import of this decision demonstrates what results when the State has failed to seek the resources at its disposal. Were an examination before trial ordered, the State would have discovered that the defendant was under the influence of drugs. Likewise, in the case at bar, had the Wildwood Police Department pharmacologist been consulted, an examination of the defendant would have shown whether in an expert's opinion there was influence of drugs, and not merely base a conviction on speculation.
Dispositive of this situation is State v. Siegmeister, supra. There a defendant driving erratically was stopped by the police. The officer testified that the defendant's pupils were dilated, his speech slurred and he lacked coordination. There was no odor of alcohol. (In the case before the court, it was described as "very slight".) Defendant was examined by a physician that same evening, who concluded that the defendant was indeed under the influence of an intoxicating substance. There was, however, no indication as to specific substance.
The court in reversing the conviction for violation of N.J.S.A. 39:4-50 emphasized that the statute was "quite specific in its stipulation of the elements." An intoxicating *330 alcohol or a narcotic or habit forming drug must be proven. "There is a category of drugs which are neither narcotic nor habit forming." Therefore, all drugs cannot be subsumed under the statutory language of N.J.S.A. 39:4-50 ... the Slate cannot merely show that a defendant is under the influence of some drug." (emphasis added). Ibid. 106 N.J. Super. at 581. The court noted there, as this court does here, that N.J.S.A. 24:18-2 defines narcotic drugs while N.J.S.A. 2A:170-77.8 enumerates non-narcotic drugs. A finding must be made pursuant to the former provision before a conviction under N.J.S.A. 39:4-50 can be sustained. In the present situation, not only was there a failure to specify what drug, narcotic or otherwise, was present, there was reasonable doubt as to whether such presence existed.
The aforementioned reasons clearly warrant a reversal of the Municipal Court conviction. The court is emphatic in its opinion that mere lay testimony, standing alone, is insufficient to sustain a conviction for driving while under the influence of drugs. The specificity of the statutory language of N.J.S.A. 39:4-50 requires a different type of proof to establish the presence of narcotic drug. To hold otherwise would obviate the legislature's intent in enumerating two classifications of drugs, one of which is not proscribed under N.J.S.A. 39:4-50. To ensure the defendant the protection of basic legal rights, this court strenuously recommends that hereafter police departments use the experts, pharmacologists, physicians, et cetera at their disposal so as to prevent unjust consequences from ill prepared cases. Both the public interest and the defendant's rights demand the careful and proper investigation and presentation of the State's case.
The defendant is found not guilty.