[Crim No. 570. Third Appellate District.—February 16, 1922.]

## THE PEOPLE, Respondent, v. HORACE MILLER, Appellant.

[1] CRIMINAL LAW—CREDIBILITY OF WITNESSES—PROVINCE OF JURY.— In a criminal prosecution, the credibility of witnesses is peculiarly within the province of the jury.

[2] ID. — ASSAULT WITH INTENT TO COMMIT RAPE — RESISTANCE BY PROSECUTRIX—INTENT OF DEFENDANT—EVIDENCE.—In this prosecution for assault with intent to commit rape, the jury was justified in believing from the evidence that the resistance of the prosecutrix was equally continuous and as effective as she was capable to make it, and the conduct and language of the defendant afforded ample proof of intent.

[3] ID. — RESERVATION OF RIGHT OF FURTHER CROSS-EXAMINATION — WAIVER.—Notwithstanding counsel for defendant, after having cross-examined the complaining witness, excused her, saying: "We are reserving the right to recall her for further cross-examination," the prosecution then having re-examined and the defendant recross-examined such witness, the prosecution then having put on other

witnesses and rested, and the defendant then having introduced all of his evidence, the trial court did not commit error in sustaining the prosecution's objection to the further cross-examination at that time of the prosecuting witness.

[4] ID.—IMPEACHMENT OF PROSECUTRIX—TESTIMONY ON PRELIMINARY EXAMINATION — ARGUMENT TO JURY. — The defendant having endeavored to discredit the testimony of the prosecuting witness by calling her attention to parts of her testimony given at the preliminary examination, claimed to be inconsistent with that given by her at the trial, and the district attorney then, over defendant's objection, having questioned her as to other parts of such former testimony tending to qualify that read by counsel for defendant and make it consistent with that given by her on the stand, it was entirely proper for the district attorney, in his argument to the jury, to read some of the former testimony to which the attention of the witness had been directed while on the stand, in an effort to show that there was no inconsistency.

[5] ID.—GOOD CHARACTER OF DEFENDANT—REPUTATION OF DEFENDANT. In a prosecution for assault with intent to commit rape, the defendant was not prejudiced by the court's rulings sustaining objections to questions relating to his reputation for "peace and quietude" and allowing those bearing on his general reputation for "morality" and as a "law-abiding citizen."

[6] ID.—SEVERAL OFFENSES—ELECTION BY DISTRICT ATTORNEY—EVIDENCE.—In this prosecution for assault with intent to commit rape, the contention of defendant that the prosecution should have elected, not later than the commencement of the trial, between the assault of the afternoon and that of the evening, and having first introduced evidence tending to prove the former, was deemed to have relied on such first offense proven for conviction, was without merit, the opening statement of the district attorney having clearly indicated that the assault in the evening was the one upon which a conviction would be asked and the evidence presented having been such that neither the jury nor defendant could have believed that he was being tried for the acts committed in the afternoon, the evidences of the occurrences during the afternoon having been offered not to prove the commission of the crime at that time, but to show the relations between the parties and the conduct of the defendant, as bearing upon the intent with which he committed the later assault.

[7] ID.—REFUSAL OF INSTRUCTIONS—LACK OF ERROR—In this prosecution for assault with intent to commit rape, the court did not commit error in refusing to give certain instructions proposed by the defendant, it having fairly instructed the jury on all the propositions of law contained therein, though not always in language so favorable to the defendant as in those refused.

APPEAL from a judgment of the Superior Court of Stanislaus County. J. C. Needham, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. B. Jennings, James L. Crittenden and J. M. Frame for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

FINCH, P. J.—The defendant was charged with assault with intent to commit rape and a prior conviction of the crime of rape. He admitted the prior conviction, but entered a plea of not guilty to the crime charged. This appeal is from the judgment of conviction and the order denying his motion for a new trial.

At the time of the alleged offense the prosecutrix was twenty-two years of age, married and the mother of one child. She was then visiting at the home of her mother in Modesto, her husband being elsewhere at the time. In the afternoon of November 11, 1920, she went riding with the defendant in his automobile. On this trip the defendant turned off the main highway into a "little road," stopped his machine, put his arms around the prosecutrix and proposed sexual intercourse, but she refused and protested against his conduct. He told her that he was sorry for his conduct, that he only did it to "find out what kind of a girl she really was," and asked her forgiveness. After much protestation on his part she finally said she would forgive him. Certain witnesses for the defendant testified to having seen the parties, at the place mentioned, sitting in the machine with their arms around each other. This testimony furnishes the only contradiction of the prosecutrix, the defendant declining to take the stand.

On their return to the mother's home they found no one there and the house was locked. After searching unsuccessfully for the door-key they drove about in search for some member of the family, but, finding no one, the defendant proposed that they go to a restaurant for dinner. At first the prosecutrix objected, but, upon the defendant's assurance that he desired to show her what kind of a man he

really could be, she accompanied him. At the table he "grabbed" her hands twice and she "pulled" them away. This conduct on his part made her so nervous that she did not eat anything. On leaving the restaurant she said she would walk home. He argued that she would be foolish to do so and asked what her mother would think to see her come into the house alone after being out with him. It was raining at the time and she finally agreed to let him take her home.

On leaving the restaurant the defendant took the road toward Empire. The prosecutrix remonstrated and the defendant said: "I am going to take you out for a ride and love you up a little bit." She replied: "No, you are not," and "started to open the door," but the side curtains being up made it difficult for her to do so. He "grabbed" her with such force as to tear two buttons off her coat and speeded up the machine and she commenced to cry. About two miles out the defendant turned off the highway and stopped the machine at some gum trees about two blocks distant from the main road. There he "grabbed" her, drew her to him and kissed her several times. She broke away from his embrace and shoved him. He tried to get out from under the steering-wheel, but she prevented him. He then repeatedly called her profane and vile names and several times told her she had "got" to have intercourse with him. She said: "You have got to kill me first. . . . I want to die first." He replied: "Well, die or no die, you have got to do it." He unbuttoned his trousers, forced her hand upon his private parts and placed his other hand on her private parts and continued to call her vile names and tell her she "had to do it." Finally, in an effort to get away from him, she promised to accede to his demands if he would let her out to answer a call of nature. He then allowed her to get out, but followed her and stood by her while outside. They then observed the lights of an automobile moving along the highway and she said: "Oh, my God! Look what you have done, look what the people will think." He, evidently to avoid being seen, "jumped" into his machine. The automobile on the highway passed on and the defendant said: "Come on in. . . . If I keep you out here until 6 o'clock to-morrow morning, you have got to do it." The prosecutrix then saw the lights of another machine and

noticed the defendant's foot as if he were getting out. She thereupon ran toward the highway, the defendant following for a certain distance and then turning back. The machine did not stop, but another approached, traveling from Modesto toward Empire, and the prosecutrix ran in front of it, screaming and waving her hands. This machine stopped and took her to Empire. The defendant followed in his own machine. The driver of the machine which picked up the prosecutrix testified that she appeared to be very much frightened and that he was compelled to swerve to one side to avoid striking her with his machine. Another witness testified that at Empire the defendant's trousers were still unbuttoned, "all the buttons opened here in front." Except as otherwise stated, the foregoing testimony was all given by the prosecutrix. It is wholly uncontradicted, except as stated, and is corroborated as to the circumstances attending her flight and escape from the defendant. It is set forth more fully than would otherwise be necessary because of appellant's insistence that it is insufficient to support the verdict.

Appellant points out circumstances tending, as he claims, to discredit the prosecutrix, but there is nothing therein which would warrant an appellate court in disturbing the jury's determination that her testimony is worthy of credence. [1] The credibility of witnesses is peculiarly within the province of the jury.

[2] The assault was not merely technical, as contended by the appellant, but was forcible and continuous from the moment the prosecutrix endeavored to leave the machine at Modesto until she finally made her escape. The jury was justified in believing that her resistance was equally continuous and as effective as she was capable of making. The conduct and language of the defendant afford ample proof of intent. From a careful examination of all the evidence there can be no doubt of its sufficiency to sustain the charge. The case of *People* v. *Norrington,* 55 Cal. App. 103 [202 Pac. 932], is so directly in point and so well supported by reason and authority that no other citation is deemed necessary on the question under discussion.

[3] At the close of the direct examination of the complaining witness, counsel for defendant examined her at length and then excused her, saying: "We are reserving

the right to recall her for further cross-examination." The prosecution then re-examined and the defendant recross-examined the witness. The prosecution then put on other witnesses and rested. The defendant thereafter introduced all of his evidence, examining eight witnesses, and then recalled the prosecutrix for further cross-examination. The prosecution objected to any further cross-examination on the ground that it should have been conducted not later than the close of the plaintiff's case and the court sustained the objection. Manifestly the ruling was not error.

[4] Counsel for defendant endeavored to discredit the prosecutrix by calling her attention to parts of her testimony given at the preliminary examination, claimed to be inconsistent with that given by her at the trial. The district attorney then, over defendant's objection, questioned her as to other parts of such former testimony tending to qualify that read by counsel for defendant and make it consistent with that given by her on the stand. In an effort to show that there was no inconsistency, the district attorney, in his argument to the jury, read some of the former testimony to which the attention of the witness had been directed while on the stand. This was entirely proper.

[5] The defendant called several witnesses to prove his good character. The court sustained objections to questions relating to defendant's reputation for "peace and quietude," but allowed those bearing on his general reputation for "morality" and as a "law-abiding citizen." These rulings were not prejudicial. (Wigmore on Evidence, secs. 59–62, and cases cited; *Wistrand* v. *People,* 218 Ill. 323 [75 N. E. 891]; *State* v. *Brady,* 71 N. J. L. 360 [59 Atl. 6]; *State* v. *Shultz,* 177 Iowa, 321 [158 N. W. 539].) Several other rulings on minor matters relating to the admission of evidence are assigned as errors, but it is sufficient to say that there is no merit in any of them.

[6] Appellant contends that the prosecution should have elected, not later than the commencement of the trial, between the assault of the afternoon and that of the evening, and that having failed to do so, and having first introduced evidence tending to prove the former, "the prosecution is deemed to have relied on such first offense proven for conviction," and that it constituted only a "technical" assault. It is apparent from the record that evidence of the occur-

rences during the afternoon was not offered to prove the commission of the crime at that time, but to show the relations between the parties and the conduct of the defendant as bearing upon the intent with which he committed the later assault. The case is wholly unlike that of *People* v. *Williams*, 133 Cal. 165 [65 Pac. 323], relied upon by appellant, where many distinct crimes of rape were proved, covering a period of four months. In that case the court said: "A verdict of guilty could have been rendered . . . although no two jurors were convinced . . . of the truth of the charge, as to any one of these separate offenses." In the instant case, on the evidence presented, neither the jury nor the defendant could have believed that he was being tried for the acts committed in the afternoon. It may be further stated that the opening statement of the district attorney clearly indicated that the assault made in the evening was the one upon which a conviction would be asked.

[7] There is no doubt as to the correctness of the instructions given by the court, but appellant complains of the court's refusal to give certain instructions proposed by defendant. The defendant requested the court to give twenty-eight instructions, ranging in length from a few lines to about four folios. Of these the court gave seven and refused twenty-one, all but two of the twenty-one being refused on the ground that they were "given elsewhere in effect." The propositions of law contained in the proposed instructions which appellant contends should have been given are as follows: (No. 3) That the words "willfully, unlawfully, feloniously, violently and forcibly" are not mere idle words of form but material allegations which must be proved. (6) That it is not sufficient to prove an intent to accomplish the act by persuasion, but an actual attempt by force and violence against the will and without the consent of prosecutrix must be shown. (9) That the use of actual force must be proved. (10) That the act must be accomplished against the resistance of prosecutrix. (13) That a mere technical assault is not sufficient. (15) That both the assault and intent must be proved, and some overt act must be shown. (18) That voluntary submission, though reluctantly given, is a defense. (19) That verbal resistance is not sufficient. (21) That want of consent must be actual and not merely technical. (22) That resistance must be by

acts, and not a mere pretense, and reasonably proportionate to strength and opportunity and must persist until offense is consummated. (24) That if consent was given at any time prior to the commission of the act, though reluctantly, the verdict should be not guilty. Proposed instruction No. 23 is so clearly argumentative as to merit no discussion.

The court instructed the jury that the prosecution must prove all the material allegations of the information beyond a reasonable doubt; that if the defendant "willfully, unlawfully, feloniously, violently and forcibly" committed the act with the intent then and there feloniously and by force and violence to carnally know and ravish" the prosecutrix "and accomplish with her an act of sexual intercourse, against her will and without her consent," then the verdict should be guilty; that "rape is an act of sexual intercourse, accomplished with a female not the wife of the perpetrator . . . where she resists, but her resistance is overcome by force and violence"; that the act must have been committed "with the felonious intent then and there to carnally know and ravish" the prosecutrix, "and accomplish with her an act of sexual intercourse, against her will and without her consent"; that proof of threats are not sufficient to constitute an assault; that if "she failed as a matter of fact to oppose the commission of the offense charged, then you may consider such lack of opposition . . . as consent upon her part to the commission of said offense and if you so find such consent to so have been given, then one of the essential elements of the crime charged is lacking and you must return a verdict of not guilty"; that general statements of the prosecutrix that "she did her utmost, and the like, will not be sufficient to establish the fact of resistance, but she must relate the acts done in order that the jury may judge whether any were omitted." Certain other instructions given are hereinafter set out. It thus appears that the court fairly instructed the jury on all propositions of law contained in the proposed instructions which were refused, though not always in language so favorable to the defendant as in those refused.

After deliberating for a time, the jury returned into court and asked that certain instructions be read to them. After several instructions had been read a juror asked: "If the defendant had threatened the complaining witness to do

bodily harm, is that the force?'' The court replied: ''I instructed you there in one place mere threats was not sufficient.'' Some suggestion was made as to the necessity of proving penetration and a juror asked: ''We are trying this man, are we not, on an attempt to commit rape?'' The court replied: ''Yes, that is the charge, not rape, but attempt.'' A few moments before making the answer of which complaint is made, the court had reread to the jury defendant's instruction No. 2, as follows: ''An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another. There are three essential elements necessary to constitute an assault, to wit: 1st. In assault the intent must be to commit a violent injury on the person of another. 2d. A present ability to do so. 3d. The actual attempt to accomplish such injury. The intent to commit a violent injury on the person of another is necessary to constitute an assault in all cases, and this intent is always a question of fact, to be proved, but it may be inferred, however, from the circumstances of the assault, if an assault has been proved.''

It must be presumed that, in the answer given, the court referred to the ''attempt'' so used in the instruction and that the jury so understood. The attorneys for both sides must also have so understood, otherwise, in fairness to the court, they would have called attention to the alleged error. The court gave no instruction relative to the crime of attempt to commit rape. Immediately prior to answering the juror's question the court had reread defendant's instruction No. 14, as follows: ''Before you can convict the defendant of the crime charged by the complaint, you must find beyond all reasonable doubt and to a moral certainty that not only was an assault committed by the defendant upon the person of the prosecutrix, but also that the defendant at the time of said assault intended to gratify his passion on the person of the prosecutrix, and that he intended to do so, in all events, notwithstanding any resistance on her part; and if you do not so find, then you must acquit the defendant of the crime charged.''

From the juror's question and the court's answer it is apparent that the object of both was to make it clear that the defendant was not on trial for a consummated rape, not that the jury might convict of attempt to commit rape.

Under such circumstances it is highly improbable that any juror was misled by the answer. The fact that the verdict was "guilty of assault with intent to commit rape, as charged in the information" indicates that the jury was not so misled.

An examination of the whole case, including the evidence, not only fails to show a miscarriage of justice, but, giving credence to the testimony of the prosecutrix, there is no basis for a contrary verdict.

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 17, 1922.

All the Justices concurred, except Sloane, J., and Shurtleff, J., who were absent.

Richards, J., *pro tem.*, was acting for Waste, J., who was absent.