Filed 12/20/21  P. v. Tucker CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C091956 |
| Plaintiff and Respondent, | (Super. Ct. No. 19F6359) |
| v. | |
| DANIEL WAYNE TUCKER, | |
| Defendant and Appellant. | |

A jury found defendant Daniel Wayne Tucker guilty of multiple offenses related to domestic violence.  He was sentenced to state prison for a term of eight years and the trial court imposed various fines and fees.  On appeal, defendant contends:  (1) the trial court prejudicially impacted his constitutional rights to confront and cross-examine witnesses by denying his request to recall the prosecution's main witness; and (2) the court erred in imposing various fees, fines, and assessments without first determining his

1

ability to pay, relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157. We affirm the judgment.

FACTUAL AND PROCEDURAL HISTORY

Defendant was charged with felony corporal injury to a spouse or cohabitant (Pen. Code, § 273.5, subd. (a); count 1)[1]; assault with force likely to produce great bodily injury (§ 245, subd. (a)(4); counts 2 & 3); false imprisonment by force (§§ 236, 237; count 4); criminal threats (§ 422; counts 5 & 6); penetration by foreign object (§ 289, subd. (a)(1)(A); count 7); and misdemeanor false imprisonment (§ 236; counts 8 & 9). Six prior serious or violent felony convictions were also alleged within the meaning of sections 667, subdivision (a) and 1170.12. It was also alleged that defendant had served a prior prison term.

At trial, V.S. testified that she had been living with defendant in an on-and-off relationship with a history of domestic violence. Following defendant's July 2019 diagnosis with cancer, V.S. moved in as a caretaker for defendant at his suggestion. On Friday, October 4, 2019, V.S. was staying with defendant at a motel in Redding when they got into an argument. The argument became physical, and defendant strangled, kicked, choked, slapped and hit V.S., and eventually sexually assaulted her. Defendant then forced V.S. to sleep in the closet. The following morning, V.S. awoke to hear defendant screaming at her. He called her names, slapped her, bit her ear, strangled her, and slammed her head on the floor. He yelled at her, telling her to leave, and she complied, going to a nearby market to clean the blood off of her face and hair.

V.S. then went to a rescue mission to sleep for the night. She ran into an acquaintance at the mission named Julie. The next morning, defendant drove by the mission and tried to get V.S. into his vehicle. Defendant threatened to kill V.S. and Julie.

---

[1] Undesignated statutory references are to the Penal Code.

He stated that he had a gun in the glove compartment. V.S. went to One Safe Place (a domestic violence service center) for help the next day and reported what defendant had done. V.S. admitted that she had been arrested for domestic violence in 2017 involving another man.

Shasta County District Attorney's Office domestic violence investigator, Tim Wiley, testified that he interviewed V.S. in January of 2020. V.S. had informed him that defendant strangled her with one hand and digitally penetrated her with the other. V.S. told Wiley that the incident lasted 30 minutes. However, Wiley opined that memory loss caused by strangulation likely resulted in a misreporting of the duration.

Julie testified that she was friends with V.S. and knew defendant as her boyfriend. Julie confirmed that she saw V.S. at the mission on October 5, 2019, V.S. was emotional and crying, and she had bumps, bruises, and a black eye. Later, Julie saw defendant position his vehicle in a way that blocked Julie's car from exiting the parking lot and trying to get V.S. into his car. Julie confirmed that defendant threatened to kill them both. Julie encouraged V.S. to go to One Safe Place. Julie described defendant as looking ill, but she added that he could move around "just fine." Julie added that she had never seen V.S. possess any of defendant's medications.

Officer Brian Berg testified that he responded to One Safe Place on October 7, 2019, to take a report of domestic violence from V.S. V.S. reluctantly disclosed that defendant had injured her. Berg observed bruising to her left eye and cheek with redness on her neck and upper chest. Pictures of these injuries were shown to the jury. V.S. told Berg that defendant bit her ear, and he saw a wound there. Berg thought V.S. told him that the strangulation lasted 10 to 15 seconds. Berg arrested defendant and found no firearm in defendant's possession.

Lisa Fisher testified that she worked for the county's in-home service, and she confirmed that V.S. did too. On or about October 9, 2019, V.S. called Fisher and reported that defendant had abused her physically. The records disclosed no complaints by defendant about the services being provided by V.S.

Andrea Avila testified that she worked as a nurse practitioner at Shasta Community Health Center, and that she saw V.S. on October 8, 2019, for a strangulation exam. Avila and V.S. discussed a sexual assault by defendant and a simultaneous strangulation. V.S. told the nurse that the strangulation lasted 15 to 20 minutes and about prior instances when defendant choked her and hit her. V.S. also told the nurse that she did not think defendant owned a gun.

For the defense, Officer Nicholas Weaver testified that he was dispatched to a domestic violence call in February of 2017, which involved V.S. and an individual named Tana. V.S. reported that she had slapped her boyfriend, who had a red hand mark on his back.

Terri Kenyon, who described defendant as her boyfriend, testified for the defense that she had been in a relationship with defendant in October 2019 and that she believed she spent October 2 to 5, 2019, with defendant. However, she asserted that she recalled October 2 to 5, 2019 was Thursday through Sunday, and it was not. Robyn Tice testified that defendant had lived on her property in a recreational vehicle in the first half of 2019 and she believed that defendant was in a relationship with Kenyon but had not seen them together at her house.

Following the presentation of evidence and arguments, the jury found defendant guilty of counts 1, 3, 8, and 9. As to count 4, the jury concluded defendant was guilty of the lesser included crime of misdemeanor false imprisonment. In a bifurcated proceeding, the trial court found one of defendant's prior serious or violent felonies true and the prosecutor successfully moved to dismiss the remaining prior conviction allegations.

4

On September 8, 2020, the trial court sentenced defendant to the upper term of four years on count 1, doubled for the strike enhancement. The court imposed a sentence of one-third the midterm, one year, on count 3, doubled for the strike enhancement to two years and stayed pursuant to section 654, and ordered one year concurrent sentences on each of the three misdemeanor counts (counts 4, 8, 9).[2] The court also imposed a $600 restitution fine (§ 1202.4), a $600 suspended parole revocation fine (§ 1202.45), an $80 court operations assessment (§ 1465.8), and a $60 conviction assessment (Gov. Code, § 70373). There was no objection to these fines and fees at the sentencing hearing.

Defendant filed a timely notice of appeal. After multiple continuances of briefing by both parties, the case was fully briefed on June 25, 2021 and assigned to this panel for review on September 14, 2021.

DISCUSSION

I

*Denial of Request to Recall Witness*

Defendant contends the court's denial of his request to recall V.S. prejudicially impacted his right to confront and cross-examine the witnesses against him. He urges his constitutional rights were violated by the court's ruling, which deprived him of the ability to fully present his defense to the jury. The Attorney General responds that the court made an evidentiary ruling subject to review for abuse of discretion, and defendant has not demonstrated such an abuse. The Attorney General has the better argument.

---

[2] We note that the parties' briefing mistakenly asserts defendant was found guilty and sentenced on count 2 rather than count 3. This trial court's minute order contains the same error. However, the oral pronouncement of judgment as well as the abstract of judgment correctly recorded that the jury found defendant guilty on count 3, not count 2. When amending the abstract of judgment as discussed *post*, the trial court should also ensure that its internal orders correctly reflect all proceedings.

5

A. *Background*

During cross-examination, counsel asked V.S. about what she had told Officer Berg. He also asked V.S. about discrepancies in how long the strangulation had lasted. He queried her about her statements to the nurse that defendant did not have a gun and about a purported discrepancy in her testimony about the sexual assault. He asked V.S. whether she took defendant's medications. He was permitted to cross-examine V.S. further following each redirect examination.

Following V.S.'s testimony, she was excused subject to recall. The trial court admonished V.S.: "You are still potentially a witness in this case. So if we need to recall you, we do that through Mr. Miller's office." Outside the presence of the jury, defense counsel suggested that the defense theory could be fleshed out more fully through other witnesses since it did not come in through V.S.'s testimony. According to defense counsel, V.S. was motivated to become a caregiver for defendant so that she could obtain pain medications to sell and use; the court did not think drug usage alone was particularly relevant.

During the defense case, counsel advised the court that he expected V.S. to return and testify further. However, she was not listed as a defense witness on defendant's witness list. Later, the court noted that V.S. could not be located despite the efforts of the prosecution and asked defense counsel for an offer of proof. Counsel stated that he had made a strategic decision and wanted V.S. to appear before the jury a second time after some of her statements to other witnesses had been presented; he planned to question her on some of the same subject matter already addressed during cross-examination. Specifically, counsel explained that he wanted to re-ask V.S. about her statements to others after the other witnesses had testified, including whether V.S. went to the hospital after reporting the abuse to law enforcement. The defense focus was V.S.'s credibility. The court found that defense counsel had "thoroughly examined V.S. on cross-

6

examination." The court noted V.S. was homeless, and it was unclear whether she could even be contacted.

Subsequently, the trial court determined that V.S. had not been found despite efforts by both the defense and the prosecution. The court was not aware if V.S. knew she was wanted for further testimony, and concluded that no refusal to testify had been shown. Further, the court did not perceive any prejudice to the defense based on the offer of proof in light of the full opportunity to cross-examine. The court concluded that defendant's confrontation rights had been unfettered.

While defense counsel agreed that defendant's confrontation clause right was not the issue, counsel urged that the right to present a defense had been implicated. Counsel asked the court to dismiss all counts pertaining to V.S. The prosecutor questioned the need or ability of defense counsel to recall a witness merely to rehash what had already been discussed.

At the conclusion of the defense case, the trial court reached a tentative ruling regarding V.S. The court found that the defense proffer amounted to a rehash of the "same subject matters that have already been covered by [] her earlier examination." The court was disinclined to allow further examination pursuant to Evidence Code section 774 and found no prejudice to the defense from an inability to recall V.S. After defense counsel failed to find any additional authority on the manner, the court adopted its tentative ruling and declined to allow further examination.

B. *Analysis*

Evidence Code section 774 provides that "[a] witness once examined cannot be reexamined as to the same matter without leave of the court, but he may be reexamined as to *any new matter* upon which he has been examined by another party to the action. Leave may be granted or withheld in the court's discretion." (Italics added.)

We review a court's decision declining to recall a witness for abuse of discretion. (*People v. Thomas* (1992) 2 Cal.4th 489, 542.) A trial court may permit a witness to be

recalled when recall would clarify inconsistencies in the witness's testimony. (*Id.* at p. 542.) However, a trial court may refuse to allow recall of a witness if further examination "would necessarily be cumulative and repetitious of matters already inquired into." (*People v. Flynn* (1958) 166 Cal.App.2d 501, 512.) " 'As a general matter, the ordinary rules of evidence do not impermissibly infringe on the accused's right to present a defense. Courts retain, moreover, a traditional and intrinsic power to exercise discretion to control the admission of evidence in the interests of orderly procedure and the avoidance of prejudice.' " (*People v. Jones* (1998) 17 Cal.4th 279, 305.)

"Although completely excluding evidence of an accused's defense theoretically could rise to [a constitutional violation], excluding defense evidence on a minor or subsidiary point does not impair an accused's due process right to present a defense. [Citation.] If the trial court misstepped, '[t]he trial court's ruling was an error of law merely; there was no refusal to allow [defendant] to present a defense, but only a rejection of some evidence concerning the defense.' [Citation.] Accordingly, the proper standard of review is that announced in *People v. Watson* (1956) 46 Cal.2d 818, 836[], and not the stricter beyond-a-reasonable-doubt standard reserved for errors of constitutional dimension (*Chapman v. California* (1967) 386 U.S. 18, 24)." (*People v. Fudge* (1994) 7 Cal.4th 1075, 1103.)

Here, V.S.'s testimony had been completed following extensive cross-examination and she had been excused subject to recall. She was not on the defense witness list. Defendant cannot show that his desired examination involved "any new matter" (see Evid. Code, § 774), particularly where defense counsel conceded he made a strategic decision to recall V.S. for examination about *the same subject matter* after the jury heard from other witnesses. Under these circumstances, the court's decision to deny defendant's request was within the boundaries of its discretion in controlling the presentation of evidence at trial. (*Id.*, § 1044 ["It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the

argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved"].)

Defendant has offered no explanation as to why these areas of inquiry were not adequately explored during defendant's lengthy cross-examination of V.S. The areas of additional questioning that defendant sought to elicit from V.S. according to the offer of proof were, at best, cumulative to defense counsel's prior questioning about inconsistencies in her statements. The only specific example defense counsel provided in the offer of proof was that he wished to ask V.S. whether she went to a hospital after defendant abused her, but the nurse practitioner's testimony that she saw V.S. for a strangulation exam at a community health facility had already answered that question. Further, we agree with the trial court's observation that it was not clear how that line of questioning was relevant to the question of defendant's *guilt* regarding the charged offenses, particularly in light of defense counsel's thorough cross-examination of V.S. Based on this offer of proof, we conclude that further examination "would necessarily be cumulative and repetitious of matters already inquired into." (*People v. Flynn, supra*, 166 Cal.App.2d at p. 512.) We see no abuse of discretion.

Nor has defendant offered a persuasive argument for how the court's ruling rises to a constitutional violation or materially prejudiced his defense. He fails to state with specificity what information would have been gleaned from the victim upon further examination of the subject matter raised in his offer of proof, and thus fails to show prejudice. The claim of error fails.

II

Dueñas *Claim*

Relying primarily on *People v. Dueñas, supra*, 30 Cal.App.5th 1157, defendant argues the imposition of fees, fines, and assessments without an ability to pay hearing violated his rights to due process and equal protection as well as the Eighth Amendment prohibition against excessive fines. Alternatively, he contends his counsel was ineffective for failing to object on ability to pay grounds. The People contend defendant forfeited his *Dueñas* challenge, and that he cannot show prejudice from his counsel's failure to object below.

Because defendant raises an ineffective assistance claim, we would exercise our discretion to address the issue on the merits even if the issue were forfeited. (See *People v. Riel* (2000) 22 Cal.4th 1153, 1192.) Our Supreme Court is now poised to resolve the question of whether *Dueñas* was correctly decided, having granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844, which agreed with the court's conclusion in *Dueñas* that due process requires the trial court to conduct an ability to pay hearing and ascertain a defendant's ability to pay before it imposes court facilities and court operations assessments under section 1465.8 and Government Code section 70373, but found, contrary to *Dueñas*, that the same did not apply for restitution fines under section 1202.4. (*Kopp*, at pp. 95-96.)

In the meantime, we join those authorities that have concluded the principles of due process do not require a determination of a defendant's present ability to pay before imposing the fines and assessments at issue in *Dueñas* and in this proceeding. (*People v. Kingston* (2019) 41 Cal.App.5th 272, 279; *People v. Hicks* (2019) 40 Cal.App.5th 320, 329, review granted Nov. 26, 2019, S258946; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1069 (*Aviles*); *People v. Caceres* (2019) 39 Cal.App.5th 917, 928.)

Having done so, we reject defendant's *Dueñas* challenge to the above-referenced fines, fees, and assessments and the derivative claim of ineffective assistance of counsel. (*People v. Kipp* (1998) 18 Cal.4th 349, 377 [failure to assert a meritless defense does not demonstrate ineffective assistance of counsel].)

To the extent imposing potentially unpayable fees or fines on indigent defendants raises constitutional concerns, we agree with the reasoning in *People v. Kopp*, 38 Cal.App.5th at pages 96 through 97 that such challenges are properly analyzed under the excessive fines clause, which limits the government's power to extract payments as punishment for an offense. (*Aviles, supra*, 39 Cal.App.5th at p. 1069.) But we disagree that defendant's restitution fine of $600 was excessive.

We review the excessiveness of a fine challenged under the Eighth Amendment de novo. (*Aviles, supra*, 39 Cal.App.5th at p. 1072.) Having done so here, we find the $600 restitution fine was not grossly disproportional to the gravity of defendant's crimes or culpability. (*Id.* at pp. 1070, 1072; *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 728.) Further, ability to pay alone is not dispositive to an excessive fines analysis. (*Aviles*, at p. 1070.) This challenge fails.

III

*Unauthorized Sentence*

While the issue was not raised by the parties, we note that the consecutive term of one year (one-third the middle term) on count 3 is unauthorized. "The one-third-the-midterm rule of section 1170.1, subdivision (a), only applies to a consecutive sentence, not to a sentence stayed under section 654." (*People v. Cantrell* (2009) 175 Cal.App.4th 1161, 1164.) "To effectuate section 654, the trial court must impose a full term and stay execution of that term." (*People v. Relkin* (2016) 6 Cal.App.5th 1188, 1198, citing *People v. Alford* (2010) 180 Cal.App.4th 1463, 1469-1472.) We exercise our inherent authority to correct an unauthorized sentence (*People v. Smith* (2001) 24 Cal.4th 849, 852) by modifying the judgment to impose a full term sentence of two years (the low

11

term), doubled for the strike to four years and stayed pursuant to section 654. We direct the trial court to amend the abstract of judgment accordingly.

## DISPOSITION

The judgment is modified to impose the low term of two years on count 3, doubled for the strike to four years and stayed pursuant to section 654. The trial court is directed to prepare an amended abstract of judgment and send a certified copy of to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

_____/s/_____

Duarte, J.

We concur:

_____/s/_____

Blease, Acting P. J.

_____/s/_____

Hoch, J.